**STATE of Missouri, Respondent,**

**v.**

**William Leslie MITCHELL, Appellant.**

**No. 9523.**

Missouri Court of Appeals,
Springfield District.

Sept. 25, 1973.

John C. Danforth, Atty. Gen., G. Michael O'Neal, David Robards, Asst. Attys. Gen., Jefferson City, for respondent.

Donald G. Cheever, Marshfield, for appellant.

TITUS, Chief Judge.

A jury found defendant guilty of forcible rape (§ 559.260 RSMo 1969, V.A.M.S.) but could not agree upon the punishment. Subsequent to post-trial proceedings, the court assessed a sentence of 12 years. Rule 27.03, V.A.M.R. Defendant appeals.

The 20-year old prosecuting witness (we shall call her "X") was sleeping on a living room sofa in her parents' Bolivar home at 7 o'clock on a Sunday morning in September 1971. Two small children were ostensibly asleep in a nearby bedroom; the parents were absent from the residence. X awakened and saw a man, whom she identified as the defendant, standing five or six feet away. To her avowed knowledge, X had never seen the man before. He was

wearing blue jeans, an "orangish" colored long-sleeved shirt (State's Exhibit 1), a white sailor-type hat (State's Exhibit 2), and gloves (State's Exhibit 3). Defendant produced a gun, approached the sofa and told X "to roll over." When X complied, she was gagged, blindfolded and her hands tied behind her back either with nylon stockings or pieces of panty hose. She was led through the house into an empty bedroom where she was told to lie prone on the bed and be quiet "or I would have two dead kids on my hands. . . . [H]e said, 'I'm already wanted for one murder, and two more won't make any difference.' And I said, 'That's not all you're wanted for. You're wanted for a couple of station robberies.' And he said, 'Stations, what kind of stations? And I—I just shut up." The nylon bindings were replaced with adhesive tape "[b]ut he didn't get the tape over my eyes, completely. . . . I could [still] see out of the right eye." After accomplishing the alleged rape, defendant applied tape to X's ankles and taped them to her hands, admonishing X not to move until she heard the front door close. When defendant left the bedroom, X raised her head and looked out the window "right next to the headboard" and saw a 1965 Chevrolet red and white pickup truck parked west of the house. Upon hearing the front door close, X gave a "hard yank on the tape," freed herself and ran to the gun case which she found bare of loaded weapons. She then "went straight to the front door, and I saw his pickup just as it had pulled out of the drive." In trying to telephone the authorities, X discovered "he had cut the wires," so "I grabbed my coat, . . . picked up both of the kids, and ran next door to the neighbor's house to use the telephone." The neighbor recounted that on the morning in question X "came a'running to my door . . . and she wanted to use my telephone. And she had the two little children with her. . . . she called the Sheriff's office . . . they were all kind of excited. [X had tape on] the ankle and one arm . . . it had

some knots in it, that seemed to have been broken, or something."

Based on the description of defendant and the pickup given the sheriff by X, defendant was arrested five days later while driving a 1965 model Chevrolet red and white pickup truck. The gloves (State's Exhibit 3) were in defendant's "pocket at the time of his arrest." A search of the truck disclosed that it contained a small black suitcase holding a shirt (State's Exhibit 1) and a hat (State's Exhibit 2). At the trial, X identified the exhibits as being the apparel worn by the defendant on the fateful Sunday morning.

The defense was alibi. Defendant's mother and stepfather testified that at the time of the alleged crime, the red and white Chevrolet pickup was parked in the defendant's driveway next door to their home in Springfield. Defendant's wife said he was home the entire Sunday morning in question and all of the previous night. In rebuttal, the state produced a witness who said the defendant was at his service station three miles from Bolivar early on the day of the alleged rape and had departed the premises at about 6:30 a. m.

The points relied on in defendant's brief are: "I. The trial court erred in refusing to sustain that part of appellant's motion for a new trial which was based upon the fact that the verdict was against the weight of the evidence. Where the prosecuting witness' testimony is contradictory, unconvincing and not sufficiently corroborated. a verdict of guilty is against the weight of the evidence. II. The trial court erred in refusing to sustain that part of appellant's motion for a new trial which was directed against the instructions given by the state. Instruction No. 3 was misleading, confusing and did not properly state the law as applied in appellant's case. III. The trial court erred in refusing to allow appellant's defense counsel the right to inspect a copy of the sheriff's report which was contained in the prosecuting at-

torney's file. Suppression of evidence favorable to an accused, upon his request, violates due process where the evidence is material to guilt or to punishment."

## I

The assignment that the verdict was against the weight of the evidence is wholly insufficient as a point for consideration on appeal [State v. Jackson, 477 S.W.2d 47, 53 [11] (Mo.1972)], and the last sentence of defendant's first point is a mere abstract statement which preserves nothing for appellate review. State v. Gillman, 354 S.W.2d 843, 850 [8] (Mo. 1962). An appellate court need not search the argument portion of defendant's brief to ascertain the meanings of abstractions written as points relied on. State v. Freeman, 489 S.W.2d 749, 752 [2] (Mo.App. 1973). Nonetheless, our gratuitous reading of the argument reveals a contention that X's testimony was so contradictory and unconvincing as to cloud the mind with doubt; he urges that this being so, X's testimony had to be corroborated, otherwise the judgment cannot be sustained. State v. Akers, 328 S.W.2d 31, 33 [2] (Mo.1959). The fault we find with defendant's argument is that the alleged contradictory and unconvincing testimony lies entirely in areas collateral to the rape. Defendant argues X could not have seen the pickup through the bedroom window because she could not have raised herself above the headboard of the bed. But this is pure supposition on defendant's part; the evidence was that the headboard was "next to the window," not in front of or blocking the window. There is no factual foundation for an assumption that X had to raise above the headboard to obtain a view of the truck. Defendant also suggests that X would not have told him he was wanted for a couple of station robberies if her testimony that she had no prior knowledge of him was true. Far be it from us to undertake fathoming a placid female mind, let alone explaining one steeped in hysterical circumstances groping for a means to deter

an intended rapist. Defendant doubts X's ability to break the adhesive bindings with "one hard yank," but cites no evidence to show the impossibility of such a feat. The fact X was not examined by a doctor following the incident [cf. State v. Edwards, 476 S.W.2d 556, 559 [1] (Mo.1972)] or that none of the binding material was offered into evidence does not, in our opinion, cast such doubt upon her testimony as to require that it be corroborated before the judgment can stand. Although X's testimony was not in need of corroboration, it was amply supported by her immediate report of the alleged crime to her neighbor and the authorities, the neighbor's testimony of having observed broken tape on X's arm and ankle, and the discovery of the clothing reported to have been worn by the intruder in defendant's possession. It was for the jury to determine the credibility of the witnesses, and it was within their province to believe the described pickup truck was near and in Bolivar at the time of the attack and not parked in Springfield as testified to by defendant's alibi witnesses. State v. Hill, 438 S.W.2d 244, 248 [9] (Mo.1969).

## II

In his motion for new trial defendant averred: "The instructions given by the Court were erroneous in that they did not fully and clearly state the law as applied to this case for the jury's proper information." Rule 27.20(a) requires that the motion "must set forth in detail and with particularity . . ., the specific grounds or causes therefor." Defendant's new trial assignment anent the instructions is too general to have preserved his complaint thereof for appellate review. State v. Arrington, 375 S.W.2d 186, 195 (Mo.1964). Moreover, the difficulty with defendant's second point relied on with respect to Instruction No. 3, is that no specific objection was made thereto at the trial or in the motion for new trial. The point is wholly insufficient to preserve anything for review. State v. Smith, 451

S.W.2d 87, 90–91 [2] (Mo.1970). Again, ex gratia, defendant's complaint of Instruction No. 3, as found in his argument, is that it purports to submit the issue of defendant's guilt of forcible rape if the jury "believe and find from the evidence" without requiring a finding beyond a reasonable doubt. The instructions must all be read together, and when so considered they constitute a single charge to the jury. State v. Crow, 486 S.W.2d 248, 254 [11] (Mo.1972). While Instruction No. 3 does not require a finding beyond a reasonable doubt, Instruction No. 2 covering the proof needed on the whole case and Instruction No. 4 defining the proof necessary to prove the presence of the defendant at the time and place when and where the offense was committed, both required a finding beyond a reasonable doubt. This was sufficient. State v. Jones, 227 S.W.2d 713, 718 [13] (Mo.1950).

### III

Contrary to the mandate of Rule 84.04(d) made applicable in criminal cases by Rule 28.18 [State v. Orr, 493 S.W.2d 374, 376 (Mo.App.1973)], defendant's third and last point does not undertake to enlighten us as to "why" he contends the trial court erred in refusing his counsel the right to inspect a copy of the sheriff's report contained in the file of the prosecuting attorney; neither does the point purport to demonstrate "why" such a report constituted evidence favorable to him or was material either to guilt or punishment. Rule 25.195 provides that upon defendant's motion "the court may order" the prosecuting attorney "to permit the defendant to inspect . . . any relevant (1) written or recorded statements or confessions *made by the defendant* . . .." (Our emphasis). However, the sheriff's report was not a statement or confession made by the defendant but "notes on what" X told the sheriff "about what she claimed happened." Also, the only avowed reason defendant's counsel wanted to examine the report was to determine "if she made statements on the witness stand that are in conflict with what she told the Sheriff." After an examination of the report by the trial judge, he advised counsel: "It is the same thing she testified to." The sheriff did not use the report to refresh his recollection.

As repeatedly stated, there is no general right of discovery in criminal cases in this state. Our Supreme Court has said, "[W]e are unwilling to open up, carte blanche, the files of the State to a defendant. . . . We hold now that, if there is a satisfactory showing that a report or statement of a witness in the hands of the State is of such nature that *without it,* the defendant's trial would be fundamentally unfair, then it should be produced; otherwise not. And this decision rests, in the first instance, in the discretion of the trial court; we may later consider, if and when necessary, an abuse of that discretion. If the trial court wishes to examine the document before ruling, it may do so." State v. Aubuchon, 381 S.W.2d 807, 814 [9, 10] (Mo.1964); State v. Swiggart, 458 S.W.2d 251, 252–253 (Mo.1970), and cases there cited. See also Brady v. Maryland, 373 U.S. 83, 87 [3], 83 S.Ct. 1194, 1196, 10 L. Ed.2d 215 (1963), holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." In the instant case, "[w]hen the request for the report was made the trial court personally examined it, and based on that examination concluded that it contained no impeaching information and did not disclose any facts which had not been developed by the witnesses. There is nothing to demonstrate that without the [sheriff's] report being turned over to appellant his trial was fundamentally unfair [or that it contained evidence favorable to the defendant]. . . . [U]nder the decisions of [the Missouri Supreme Court] applicable at the time of the trial of this case, the production of the report was discretionary with the trial court, and under the circumstances no abuse of that

discretion is demonstrated." State v. Franklin, 482 S.W.2d 420, 423 [5] (Mo. 1972).

The information is sufficient in form and substance. The verdict is in proper form and responsive to the information and the submitted issues. Allocution was granted and sentence and ·judgment are proper and responsive to the verdict. Rule 28.02.

Thus, having considered and disposed of all of the alleged trial court errors adverse to the defendant, albeit they were not properly preserved and presented for appellate review, we affirm.

STONE, HOGAN and BILLINGS, JJ., concur.