STATE of Missouri, Plaintiff-Respondent,

v.

Roby HUDSON, Defendant-Appellant.

No. 35401.

Missouri Court of Appeals,
St. Louis District,
Division 1.

March 11, 1975.

John D. Bauer, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, William F. Arnet, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

DOWD, Presiding Judge.

Defendant was found guilty by a jury of murder in the second degree of an 18 month old baby. The jury assessed defendant's punishment at 100 years imprisonment. Defendant appeals. We affirm.

There is no challenge to the sufficiency of the evidence. Defendant had been living in St. Louis, Missouri with Sharon Darby and her three small children. Defendant was not married to Sharon and was not the father of the children. In the evening of November 10, 1972, Jackie Darby began crying. Defendant told the baby to "shut up" and when the baby did not stop crying, the defendant picked up the baby by the shirt and shook him. The defendant then pitched the baby into the closet making "a loud thump" noise. The baby then stopped crying. The baby was still in the closet the following day. When it became apparent that the baby was dead, it was decided not to take the baby to the hospital because of bruises on his buttocks "where he was whipped." It was feared that the defendant and Sharon would be arrested if the bruise marks were discovered. It was decided to take the baby out and bury it in an isolated area.

The defendant, Sharon and two others first drove to Illinois and there drove around for thirty minutes looking for a swampy area near the river to bury the baby. Because of heavy traffic in Illinois and the fear of being detected, it was decided to go to De Soto, Missouri to bury the baby. Defendant formerly lived in De Soto, Missouri. The baby was buried in a shallow grave, near the bank of a creek. Sharon held the baby's body and a flashlight while the grave was being dug.

The following day the defendant discussed the fear of the body being discovered and identified. The defendant and others then drove to the burial site and after digging up the grave, the defendant used a shotgun to shoot the head and face off the body. Defendant stated that the purpose was to destroy the face so that the body could not be identified and traced. Defendant also had a hatchet to dig the grave deeper. Defendant stated it was suggested that the hatchet be used to chop

off the hands and feet of the body to prevent identification but he rejected this idea.

The doctor who performed the autopsy on the child stated that death resulted from a severed spinal cord which was accompanied by a skull fracture. In the doctor's opinion the skull fracture and severed spinal cord were caused by the body having been propelled through the air at a high velocity with the skull striking a blunt, immoveable object.

Defendant denied to the police that he threw the child into a closet, stating that the child died from convulsions resulting from a fall in his crib. Defendant also told the police that he had shaken the baby 3 or 4 times in an attempt to get the child to stop crying. He then laid the baby on a mattress and the baby then stopped breathing. He applied mouth to mouth resuscitation but the child became lifeless.

The jury was permitted to view a video tape of a statement made by the defendant to the police. Displayed on the video tape were a shovel, a hatchet, a shotgun and the baby clothing worn by the victim. During the course of his statement, the defendant related the burial and subsequent shooting of the face and head of the victim. The defendant did not testify and no defense testimony was submitted to the jury.

The first issue presented for our determination is whether the trial court erred in admitting certain testimony concerning two prior occasions during which the defendant struck and stepped on the baby. Objection was made to the testimony, whereupon a recess was had to discuss the applicable law, as submitted to the trial court by both attorneys. The objection was overruled and testimony was given regarding two instances where the defendant beat the baby. These beatings occurred two months before the death of the baby. Defendant contends that this testimony constituted evidence of other crimes and hence was inadmissible.

■ The general rule comes from the oft-quoted case of State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954): "proof of the commission of separate and distinct crimes is not admissible, unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial." The reasoning behind this rule is that such evidence violates defendant's right to be tried on the charge for which he is indicted and also, the tendency of this type of evidence to be misleading.

■ However, there are five exceptions to the general rule. Such evidence will be admitted when it tends to establish (1) motive; (2) intent; (3) the absence of accident or mistake; (4) a common scheme or plan, or (5) the identity of the person charged. State v. Reese, *supra* at 307; State v. Smith, 431 S.W.2d 74, 79 (Mo.1968). If the evidence sought to be admitted reasonably tends to prove a material fact in issue, then it is not to be rejected merely because it incidentally proves defendant guilty of another crime. Where the evidence of prior crimes is relevant to prove intent for the offense charged, such evidence has been held admissible. State v. Robinson, 420 S.W.2d 272, 273 (Mo. 1967).

■ In this case the state contends the evidence of prior beatings is admissible under the second and third exceptions to the general rule; that is, to prove intent and to show the absence of accident. We agree. Although it is true that when the evidence of the crime charged bears with it the implication of intent, evidence of prior like offenses will not be admitted. State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, 923 (1947); State v. Holbert, 416 S.W.2d 129, 133 (Mo.1967). We do not believe, however, this rule applies here. This is for the reason that intent remained an issue in this case and the evidence of prior beatings was admissible. The state's evidence to prove second degree murder was that de-

fendant (1) told the child to "shut up"; (2) picked the child up and "shook him"; and (3) "pitched" the child into the closet. To support a conviction of second degree murder, the state was obliged to prove that defendant threw the child in the closet with intent to kill it or do it serious bodily injury. State v. Smart, 485 S.W.2d 90 (Mo.1972).

The intent is not obvious, clear, or implied from the language "pitched" and "shook". Defendant's statement on the video tape was that he merely shook the baby and then laid it down on a mattress. We believe that the evidence of beatings in the two months prior to the killing is admissible in establishing the intent required for murder in the second degree.

State v. Lamborn, 452 S.W.2d 216 (Mo. 1970), was also a second degree murder case, where a six year old child was beaten to death. The court held the evidence sufficient to support a second degree murder conviction. The evidence was that on four prior occasions, the defendant struck the child and then "beat the child up against the wall, picked her up by the ankles and 'slung' her around all over the place, and 'slung it against the bathtub,' while holding the child by the ankles. . . . Defendant took her head and beat it up against the window and the bottom of the window." The court in *Lamborn* also considered prior instances of beating.

Furthermore, since defendant's video statement gave a version of the facts that suggests the baby died by accident,[1] the evidence of prior beatings is also admissible to show the absence of accident. The trial judge did not err, therefore, in admitting the evidence of beatings in the previous two months, since the evidence established both intent and the absence of accident in this prosecution for murder in the second degree.

■ Defendant also argues that there was error in admitting testimony concerning the disfigurement and burial of the child's body, since such conduct constitutes a crime and is inadmissible under the general rule. Assuming, without deciding, that defendant's actions were criminal in nature, we nevertheless find such evidence to be correctly admitted. "Acts, conduct, and declarations of a defendant occurring after the commission of an alleged crime which are relevant and tend to show consciousness of guilt, or a desire or disposition to *conceal the crime,* are admissible." State v. Ruckman, 222 S.W.2d 74, 75 (Mo. 1949) (Emphasis added). The case of State v. Aitkens, 352 Mo. 746, 179 S.W.2d 84 (1944), is squarely on point. That case held that evidence of an attempt to mutilate a body to conceal the cause of death was admissible, as would be an effort to destroy or conceal a corpse. Defendant's efforts to bury and disfigure the body in this case are relevant in that they tend to show both consciousness of guilt and an attempt to prevent identification of the body and thus conceal the crime. The evidence was admissible. State v. Ruckman, *supra.*

Defendant's second contention on appeal concerns the video tape of the statement made by the defendant to the police. During the course of the statement, defendant spoke at length regarding his actions subsequent to the baby's death. The statement related the burial, the later disinterment, and the shooting of the child's face. Also, on display during the statement were a shovel, a shotgun, a hatchet and the clothes the baby was buried in. Defendant argues that these items, as well as defendant's statements, are evidence of subsequent criminal activity and are therefore inadmissible. He further argues that the inflammatory manner in which the items were displayed was highly prejudicial to the defendant.

---

1. Defendant's statement was that a baby bed fell down and hit the baby's head and that the baby seemed all right until the following

day when the baby had a sort of seizure and died.

■ We begin by repeating that evidence concerning defendant's actions subsequent to the baby's death is admissible to show defendant's consciousness of guilt and defendant's plan to destroy and conceal the corpse. Since evidence of concealment and mutilation is admissible, the demonstrative evidence (gun, shovel, hatchet and clothes) of these subsequent actions is also admissible. Demonstrative evidence is admissible if it tends to prove or disprove a fact in issue or to corroborate the testimony of witnesses. State v. Walden, 490 S.W.2d 391, 393 (Mo.App. 1973); State v. Tyson, 363 Mo. 1242, 258 S.W.2d 651 (1953).[2] The shovel, hatchet and shotgun were identified by the defendant as the items used by him in an attempt to conceal the corpse. The demonstrative evidence in the video tape substantiates the testimony of the state's witnesses concerning the concealment, as well as tends to

prove the concealment itself. Thus, such evidence was admissible.[3]

There remains, then, defendant's assertion that the manner in which the evidence was displayed was inflammatory and highly prejudicial. He argues that a close-up was taken of the shotgun, the gun was shown repeatedly, and undue emphasis was placed on the items.

We have viewed the video tape in question and especially noted the portions complained of here. The items on the video tape were admissible, and were not displayed in an inflammatory manner. The trial court properly so ruled.

■ Defendant's final point on appeal concerns the submission of Instructions 11 and 12, which were given after the closing arguments and just before the jury retired to deliberate the case.[4] De-

2. State v. Tyson, 363 Mo. 1242, 258 S.W.2d 651 (1953), held that demonstrative evidence is admissible even where the witness is able to adequately describe the item.

3. The baby clothes were admissible on the theory that articles of clothing on a deceased are admissible in establishing the identity of the body, especially in a case like this where the identity has been partly destroyed. State v. Anderson, 384 S.W.2d 591, 606 (Mo. banc 1964).

4. Instruction 11 reads:
"Evidence has been introduced that the defendant made certain statements relating to the offense for which he is on trial.
"You are instructed that before you can consider any statement you must find that it was made by the defendant and that it was freely and voluntarily made.
" 'Freely and voluntarily' means that a statement must be knowingly made without violence, duress or coercion, either physical or mental, and without any threats or promises in order to induce or force the making of the statement. In determining whether a statement was freely and voluntarily made the jury must consider all of the attendant circumstances at the time the statement was given.
"If you find that a statement was made by the defendant and that it was made freely and voluntarily, then you may give it such weight as you believe it deserves in arriving at your verdict. If you find that

it was not made by the defendant or that it was not made freely and voluntarily, then you must disregard it and give it no weight in your deliberations.
"In addition, before taking into consideration the alleged statement you must also find that it meets all of the requirements set out in Instruction No. 12."
Instruction 12 reads:
"You are instructed that before you may consider any statement made by the defendant while in custody you must find that while in custody defendant made the statement and that before doing so:
"First, the defendant was informed that he had a right to remain silent, and
"Second, the defendant was informed that anything he said could be used against him, and
"Third, the defendant was informed that he had a right to have counsel present at the time of the questioning, and
"Fourth, the defendant was informed that if he could not afford counsel, counsel would be furnished without cost to him before any questioning for the purpose of having such counsel present at any questioning.
"If no counsel was present at the time the alleged statement was made by the defendant, the state must prove beyond a reasonable doubt that the defendant intelligently and understandingly waived the right to have counsel present at the time of the questioning.
"In addition, before taking into consideration the alleged statement you must also

fendant's argument is that in giving these two instructions separately, and after the closing argument, the trial court emphasized them and thus indirectly placed undue emphasis upon the video tape statement. Defendant concedes that the form of the instructions is correct.

The factual prelude to the submission of the instructions was as follows: during closing argument, the prosecuting attorney made references to the video tape confession discussed earlier and shown to the jury. Defendant's attorney, in his closing argument to the jury, told the jury that they should consider only the testimony from the witnesses on the stand in arriving at their verdict. At the close of the arguments the trial judge was of the opinion that an issue had been raised during arguments regarding the video tape. Accordingly, the trial court gave the two instructions, one on the voluntariness of the statement and the second concerned whether the defendant received the Miranda warnings. The court also gave a cautionary in-struction that all of the instructions should be given equal weight.[5] Counsel on both sides were offered additional time to make argument on the additional two instructions, but both declined.

We begin by saying that it is not improper for a trial judge to give additional instructions after argument. State v. Walker, 110 S.W.2d 780 (Mo.App.1937). Here, the trial judge gave additional, proper instructions which the court felt were warranted by the circumstances. The trial judge also gave a cautionary instruction on the weight to be placed on the additional instructions. Furthermore, the instructions in substance were favorable to the defendant. Prejudice to the defendant will not be presumed from these facts. The trial judge did not abuse his discretion in giving the additional instructions.

Judgment affirmed.

WEIER, CLEMENS and RENDLEN, JJ., concur.

---

find that it meets all of the requirements set out in Instruction No. 11."

5. Following the giving of Instructions 11 and 12, the court gave the following instruction: "THE COURT: Again I'm telling you that each of the Instructions that I have read, one through twelve should be given equal consideration and the same weight and all the Instructions should be considered in considering the evidence in this case."