STATE of Missouri, Respondent,

v.

Leo W. STAPLETON, Appellant.

No. KCD 28085.

Missouri Court of Appeals,
Kansas City District.

July 6, 1976.

Motion for Rehearing and/or Transfer
Denied Aug. 2, 1976.

Application to Transfer Denied
Sept. 13, 1976.

William G. Mays, II, Public Defender, 13th Judicial Circuit, David M. Doak, Asst. Public Defender, Columbia, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SHANGLER, Presiding Judge.

The defendant appeals from a conviction for manslaughter and sentence of ten years imprisonment. The sufficiency of the proof for conviction is not disputed and the trial evidence is related only as it bears on the two issues presented on this appeal.

The defendant first asserts that the denial of certain evidence introduced by the prosecutor was so flagrant a violation of due process as to require dismissal of the criminal accusation and proceedings against him. The defendant also asserts that the failure of the State to disclose, upon his written request for discovery under Rule 25.32(A)(2), the substance of an inculpatory statement by the defendant to a prosecution witness, requires a new trial.

The homicide was the result of an affray between two of the guests at the Hayes residence one evening during the Christmas holiday season. A dispute arose between Holt, who became the victim, and Stapleton, the accused, who became annoyed by what he considered unjustified accusations of intermeddling. Holt threatened to hit Stapleton in the mouth, and then the harangue shifted to a debt of three dollars which Holt claimed from Stapleton and demanded he pay. Holt ran into the kitchen, opened the drawer where the knives were kept, grasped and came up with some spoons. Ms. Hayes, the owner of the premises, intervened, restored the spoons to the drawer and objected to such behavior in her home. Holt ran outside and challenged Stapleton to follow. Stapleton went into the kitchen for a knife to protect himself, although Ms. Hayes kept on telling him that Holt had no knife, but had taken some spoons. She attempted to wrest from him the butcher knife he had taken from the kitchen drawer, and it fell to the floor. About then, Holt returned to the house with a green board plank, about six feet long and two inches by eight inches in dimension, used as a walkway from the back yard. The plank caught the ceiling as he came in and fell; so the protagonists faced each other, both without weapons.

Then, of a sudden, Stapleton grabbed Holt, slammed his head first against the door, then against the concrete floor. Another guest at the Hayes home, Shirley Murray, tried to disengage them but without success. The blood came from Holt's head, and Stapleton finally stopped his assault. An ambulance took Holt to the hospital where he died.

The assault and eventual death of the victim at the hospital were events during the early morning of December 21, 1974. The police were called before the victim was removed to the hospital and attempted to investigate amidst a scene of pandemonium. They managed to get the attention of the defendant Stapleton who told them that the victim had come at him with a board in one hand and a knife in the other and that when he undertook to defend himself, Holt fell through the glass of a storm door and injured himself. After his arrest, on December 22, 1974, Stapleton gave a formal statement which described the board Holt was holding as "a long two-by-four" and otherwise corroborated his earlier oral statement. The gestures of the defendant described the board as about three or four feet long. Following this disclosure, the police returned to the Hayes residence later that day; there they saw a green broomstick handle, about three feet long, and a green two-by-eight about eight feet long. They concluded that the broomstick more merely conformed to the description given them by Stapleton of the board or "stick" with which the victim had threatened him, and so seized it as evidence.

On the next day, December 23, 1974, the Public Defender was appointed to represent the defendant who had been arraigned before the magistrate on a charge of murder in the second degree. The two staff attorneys of that office immediately interviewed the defendant Stapleton who recounted the events leading to the arrest and described a board which he told them was the instrument of assault against which he defended. The attorneys went directly to the Hayes residence, were allowed to investigate and

photograph the scene and to take possession of a large green board which they found lying outside the house. The board matched exactly the description Stapleton had told them was used by the deceased against him and was found where the defendant had said the board was lying. The attorneys also observed a butcher knife by the sink which matched the description given by the defendant, so they photographed it and telephoned the police of the discovery.

As they left the premises with the green board, they were observed by two police officers who were entering the residence. The board was taken to the Public Defender office for keeping. There they soon received a telephone call from the prosecutor who claimed the board as State's evidence and demanded possession. The attorneys refused on the ground that the evidence was relevant to the defense. After some discussion [and threat of forcible entry and prosecution, according to the testimony of the attorneys] the prosecutor agreed to treat the board as defense evidence, but demanded immediate possession so that the board could be tested for blood. The prosecutor offered to submit the evidence to the State Highway Patrol Laboratory for tests on behalf of both parties, but the Public Defender was adamant that the board was defense evidence and that the board would be relinquished only as required by the rules of criminal discovery. At the conclusion of this telephonic conversation, after some reflection [and the contended threat of entry and prosecution], the attorneys relinquished the board to police sent by the prosecutor for that purpose.

The board was returned to the Public Defender within three or four days and has not since been in the possession or custody of the State. The defendant neither accepted the prosecution offer for joint testing of the evidence nor initiated its own examination.

At the trial, the court issued a subpoena duces tecum to the Public Defender which commanded the production of the green plank. The defendant moved to quash the subpoena on grounds that to compel his counsel to testify or produce evidence in the criminal prosecution violated the attorney-client privilege and his Fifth Amendment right to be free from self-incrimination, and that the State was otherwise not entitled to the use of the plank because the evidence was the product of an illegal search and seizure. The defendant also moved the quashal of the information.

The court heard evidence [already related] on both motions, suppressed the subpoena duces tecum, but denied quashal of the information. The cause proceeded to trial and a conviction was returned.

■ It is the contention on appeal that the mere suppression of the evidence in these circumstances was not an adequate remedy, that nothing short of dismissal of the prosecution can deter the State from illegal activity of the kind perpetrated against him. The defendant acknowledges that the traditional remedy available to a person for the invasion of his personal security by an unlawful search and seizure is the suppression and exclusion of the illegal evidence. *Weeks v. United States,* 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The defendant contends, however, that the application of this exclusionary rule presupposes that the evidence unlawfully seized will damage the defendant, whereas the evidence taken from him was favorable to the defense. The evidence, he contends, was discovered by his attorney as the result of disclosures made by the defendant in confidence, thus lawfully in his possession and not subject to the demand of the prosecution. What was seized in actuality [he continues in argument] was not merely a board but four invaluable days of preparation for defense wrested from him without sanction of law, and the additional advantage of a basis for rebuttal of evidence of self-defense.

■ The motion to suppress the subpoena was sustained without statement of grounds; we assume the ruling was respon-

sive to the legal arguments made to the trial court on the motion and iterated here. We assume also, for the purpose of decision, the soundness of those contentions.[1] Even so, the discovery of evidence by government through illegal means gives no basis to abate a criminal proceeding, let alone bar it altogether. *United States v. Blue,* 384 U.S. 251, 255[4–6], 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966); *Costello v. United States,* 350 U.S. 359, 363[2–7], 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Isaacs,* 347 F.Supp. 743, 757[26] (N.D.Ill.1972). All the defendant was entitled to was the suppression of the evidence and its fruits, a remedy fully allowed by the trial court.

The next contention is that the court erroneously allowed a witness for the State to testify to an inculpatory statement made by the defendant but which had not been disclosed to the defendant prior to trial in compliance with a written request for discovery. In advance of trial, the State and defendant each had requested discovery of the other. In response to the direct inquiry of the court at the pretrial, counsel for the State and for the defendant declared without qualification that disclosure and compliance with the discovery requests had been made. Among the disclosures requested of the State was request number 2 submitted by the defendant in the terms of Rule 25.-32(A)(2):

> Any written or recorded statements and the substance of any oral statements made by the defendant or by a co-defendant, a list of all witnesses to the acknowledgment of such statements and a list of

the last known addresses of such witnesses.

The defendant had also requested discovery in the terms of Rule 25.32(A)(1) of the names and addresses of persons the State intended to call as witnesses at the trial, together with their written or recorded statements.

The chief witness for the State was Shirley Murray, one of the guests at the Hayes residence on the night of the altercation. The examination by the prosecutor elicited this testimony from her:

Q. Now, Shirley, did you see Mr. Stapleton on Saturday, the twenty-first, later that day?

A. Yes. . . .

Q. In relation to the incident, I mean.

A. Yes.

Q. And you all had a conversation?

A. Yes. We had a conversation, and he asked me did I think he was wrong, and I told him yes, he was wrong for the fact that Mrs. Hayes told him that Mr. Holt didn't have nothing in his hands but a spoon, made him wrong because he could have easily just walked out and ignored it.

MR. DOAK: I object, this statement is speculative, hearsay.

THE COURT: The last part of the witness's answer, the objection will be sustained. She may relate what she said and what the defendant said.

Q. Tell the Court exactly what you said and I want what he said back to you,

---

1. The argument the defendant makes rests on a thesis of doubtful validity: that a lawyer directed by the communication of an accused client to material evidence at the scene of the crime may seize the evidence and withhold it from the State on a claim of attorney-client privilege. That question, which probes the very nature of our criminal justice system, remains generally unsettled. [See: Freedman, The Adversary System and the Obligation of Confidentiality, 10 Criminal Law Bulletin, No. 10, p. 980 (1974)]. Those decisions which have confronted the issue have ruled adversely to the contention the defendant proposes. [See: *People v. Lee,* 3 Cal.App.3d 514, 83 Cal.Rptr. 715, 722[10, 11] (1970); *State v. Olwell,* 64 Wash.2d 828,

394 P.2d 681, 683[1–8] (1964); *In re Ryder,* 263 F.Supp. 360 (D.C.E.D.Va.1967), aff'd at 381 F.2d 713 (4th Cir. 1967)]. A number of states—Missouri is not numbered among them—have enacted legislation dealing with the concealment, tampering or destruction of physical evidence. [California Penal Code, § 135; New York Penal Law § 215.40; Ohio Revised Code, § 2921.12; Texas Penal Code, § 37.09]. The restraints on a Missouri lawyer are ethical only. The Code of Professional Responsibility, DR 7–109 requires without further definition that: "A lawyer shall not suppress any evidence that he or his client has a legal obligation to reveal or produce".

if he said anything. Did he say anything to your statement.

A. Yes.

Q. What did he say?

A. He said he knew he was wrong.

At the conclusion of examination by the prosecutor some few questions later, counsel for defendant complained at the bench that neither the existence of this statement nor that it would be given in testimony by witness Murray had been disclosed on discovery. In rebuttal, the prosecutor stated that he had advised counsel of a lengthy conversation between the defendant and witness Murray some of which [in the words of the prosecutor] "was prejudicial to the defendant and [he] would put that in". The court overruled the objection and the trial proceeded. The objection was raised again on the new trial motion, but was overruled again on the stated grounds that the objection was not timely, nor request made to strike the testimony.

The trial court supposed, as does the State on appeal, that the rule which obtains in trial procedure that in the absence of surprise, an objection to a question on examination must be made before answer is given to preserve anything for review [*State v. Graham,* 527 S.W.2d 936, 942[7, 8] (Mo.App.1975)] also governs the right to disclosure of evidence under the rules of discovery in criminal proceedings.

█ The provision of Rule 25.45 that the court may apply corrective sanctions any time during the proceeding [2] show that the rules of criminal discovery are not a mere etiquette but the festoons of due process. They are meant to allow a defendant a decent opportunity to prepare for trial and avoid surprise. *State v. Johnson,* 524 S.W.2d 97, 101[7] (Mo. banc 1975). It is evident from the statement of the prosecutor to the court that he had full knowledge that Ms. Murray intended to testify the defendant had told her "he knew he was wrong", a statement the prosecutor described as "prejudicial to the defendant". The substance of that statement was not disclosed to the defendant, although requested by discovery. Compliance with discovery is not at discretion; the obligation to make answer under the rules is peremptory. Rules 25.32, 25.37; *State v. Buckner,* 526 S.W.2d 387, 392[3, 4] (Mo.App.1975).

█ There can be no doubt that the admission by the defendant to witness Murray disparaged the self-defense which the defendant had steadfastly maintained before the police and at the trial. It was unfair evidence received by surprise and should have been redressed by the court when informed that the prosecutor had withheld the evidence from the discovery of the defendant. The objection to the evidence remained timely, although deferred until the conclusion of examination. The effect of that lapse was not to deny the defendant remedy altogether, but to reduce the corrective alternatives otherwise open to the court.

The judgment is reversed and the cause remanded for new trial.

All concur.

---

**2.** "If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other orders as it deems just under the circumstances . . . ."