**STATE of Missouri,**
**Plaintiff-Respondent,**

v.

**Donald HELMS, Defendant-Appellant.**

**No. KCD 28811.**

Missouri Court of Appeals,
Kansas City District.

Dec. 5, 1977.

Clifford A. Cohen, Public Defender, Lee M. Nation, Asst. Public Defender, Kansas City, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Frank J. Murphy, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before PRITCHARD, P. J., and SWOFFORD, C. J., and DIXON, J.

DIXON, Judge.

Defendant appeals a conviction of second degree murder. The jury fixed punishment as 40 years imprisonment.

Defendant raises issues of (1) error in admitting testimony of witnesses as to exhibits, reports and memoranda because the state had violated discovery procedures; (2) error in admitting evidence of defendant's prior assaultive behavior toward the victim.

Defendant does not challenge sufficiency, and a short statement of fact will be sufficient. The victim was discovered dead in the defendant's apartment January 24, 1976. In the early morning hours of January 24, 1976, defendant and the victim, his girlfriend, who was living with him, were having a loud argument. This argument was heard by the tenant of the adjoining apartment. The argument continued from 2:30 a.m. until 3:45 a.m. when the neighbor heard water running in the bathroom of defendant's apartment. The defendant and his deceased girlfriend had engaged in tumultuous arguments before and defendant had beaten her on several occasions prior to January 24, 1976. The victim was lying next to defendant who had slit his wrists with a razor blade after telephoning his mother in Chicago. The cause of the victim's death was numerous blunt force body blows with contribution from burns caused by scalding and drowning. The defendant had been in the apartment all that night, having arrived there at 12:30 p.m. He had entered his apartment about thirty minutes earlier and had found his girlfriend with another man. The defendant admitted striking the victim. On one occasion, he stated to police officers that he had killed his girlfriend. Wet cloths, some with blood stains on them, were found about the apartment. Also found were wet men's boots and socks. Blood stains were found on a radiator, the carpet, wall, and baseboard. A wet mop was found in the bathtub. The apartment building is locked twenty-four hours a day. No signs of forced entry to the apartment could be detected. Some of the blood stains found in the apartment were Type B, the same type as the deceased's blood.

The thrust of the defendant's first point is that the trial court erred in permitting witnesses to testify whose names were not furnished to defendant upon discovery. The fact that these witnesses were not furnished to defendant on discovery is conceded. The real issue is the propriety of the trial court's refusal to apply the sanction of exclusion under the circumstances.

Some more detailed statement of the circumstances and the evidence adduced is necessary to resolve the issue. Two months before trial, defendant filed a request for

discovery which was detailed and all inclusive. On the morning of the trial, the State endorsed the coroner, a lab technician, and a policeman. Upon the offered endorsement, defendant objected, asserting, as was the fact, that these witnesses had not been disclosed. The trial court permitted the endorsement, but directed that the defendant be given access to the witnesses and reserved the question of the admissibility of the evidence.

The coroner testified after the noon recess on the second day of trial. During the direct examination, defense counsel interrupted and established that Dr. Peterson was referring to a handwritten memorandum she had prepared from her official report. She also had the official report with her on the stand. Defense counsel objected that he had not been provided a copy of the official report at any time in violation of the rules of discovery. The State countered, saying the defense had a preliminary report of the results of the autopsy. The court ruled that Dr. Peterson's testimony was not that much of a surprise, but nevertheless took a recess so that defense counsel might have an opportunity to study the official report. Defense counsel read it during the recess, but upon resumption of the proceedings objected to Dr. Peterson's testimony on the ground that the official report had not been furnished him. The court overruled the objection opining that the recess given for the purpose of allowing defense counsel to study the report appeared sufficient. The court noted that "if the defense is able to show prejudice to itself in any way, by either the failure to disclose the report of the autopsy, or the report of this more recent fingernail examination and comparison, that will be given further consideration; and the objection may be renewed or any other appropriate request may be renewed at that time, when it becomes clear." The fingernail examination went out of the case because the state was unable to present expert testimony as to a comparison.

Later on, defense counsel objected to the pictures of the victim taken by a policeman on the grounds that they were not provided him pursuant to his request for discovery but were provided only at the proceedings of the previous day. The court overruled the objection and admitted the photographs into evidence noticing that the defendant had suffered no prejudice.

The court indicated that the delay in providing photographs of the scene and the reports of blood samples made at the time of the original investigation did not prejudice the defendant since even if he had them earlier he could not have taken any other pictures or obtained any other samples since these were factual matters available only at the time of the original investigation.

A forensic chemist testified for the State. During his direct examination, the defense counsel objected to his testifying on the grounds that the State had not complied with the rules of discovery by supplying defense counsel with reports of examinations made. These reports had been supplied on the morning of the second day of trial. The objection was overruled.

There is no question that these witnesses and the various reports and exhibits should have been made available to the defendant upon the original discovery motion. The State's failure to so provide does not, as defendant asserts, require automatic exclusion. Rule 25.45 expressly provides otherwise; it is as follows:

"If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other orders as it deems just under the circumstances. Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court."

The principles governing the application of this rule are settled. The imposition of

the sanctions authorized by Rule 25.45 for the failure to comply with a discovery request or order is a matter for the trial court's discretion. *State v. Moten,* 542 S.W.2d 317 (Mo.App.1976); *State v. Buckner,* 526 S.W.2d 387 (Mo.App.1975); *State v. Johnson,* 524 S.W.2d 97 (Mo.banc 1975). The question to be decided is whether or not the failure to produce as required by the rules results in a fundamental unfairness to the defendant. *State v. Moten, supra; State v. Buckner, supra; State v. Johnson, supra; State v. Mitchell,* 500 S.W.2d 320 (Mo.App.1973). Whether prejudice results in any given case from the State's failure to produce, upon request, evidence favorable to the defense depends upon the nature of the charge, the evidence presented by the State, and the role that nonproduced evidence would likely have played. *State v. Dayton,* 535 S.W.2d 469 (Mo.App.1976). The nonproduced evidence must be of a character to raise a reasonable likelihood that it would have affected the result, if known at the trial. *State v. Dayton, supra.*

Although the instant case is not one concerning nonproduction, but rather untimely production, the principles of review enunciated in *Dayton* are applicable. The inquiry here, as in *Dayton,* should be whether or not, considering all the factors surrounding the trial, the reports, if produced earlier, would likely have affected the result.

Here, the trial court, wisely exercising its discretion, required the State to divulge the information and deferred ruling on the admissibility until defense counsel had time to examine the exhibits and to determine if he cared to interview the witnesses.

In this situation, the issue is not the time necessary to investigate and rebut the State's late disclosed evidence but the opportunity to examine it and make a record that additional time was needed or that the delay had prevented proper rebuttal because evidence available at the time the State should have produced the evidence was not available when it was finally produced. Defendant asserted neither ground to the trial court and does not in this court

present any basis for a finding that earlier disclosure would have permitted defendant to have countered the evidence in some fashion. It is not even contended that cross examination was ineffective because of a lack of time to prepare. In fact, the only opinion evidence, as opposed to scientific factual information, offered by the State from these witnesses and exhibits was effectively questioned by the defense.

Defense counsel on cross examination of the coroner elicited an admission that she could not pinpoint any one single cause of death; further, from the chemist, that he could not identify the blood stains as being the blood of any one individual but could only identify them as to blood type.

The trial court did not abuse its discretion in the application of Rule 25.45.

Defendant's second claim of error relates to the admission of testimony of prior assaults by the defendant upon the victim. A witness testified that defendant and the victim had a history of fighting between themselves. These fights resulted in the victim incurring bruises, puffy face and black eyes. This happened on more than one occasion. One time, an altercation resulted in the victim jumping from a window and running down the street naked and bleeding. Another witness testified that on several occasions she had heard defendant and deceased arguing. About two months prior to the victim's death, the witness observed the victim crawling out the door trying to get away from defendant. The victim's clothing and hair evidenced a struggle and defendant struggled with the victim in the presence of the witness. Only the first witness's testimony was objected to as showing evidence of prior crimes.

One of the exceptions to the general rule respecting evidence which incidentally proves commission of another crime is evidence showing intent. The present case involves a charge of second degree murder and the intent of defendant to kill or inflict serious bodily injury is essential to the proof. That intent is not obvious, clear, or implied from applying physical force to another person by means of hands and fists as the instant information charges.

*State v. Hudson,* 521 S.W.2d 43 (Mo.App. 1975), controls this issue in this case. In *Hudson,* evidence of prior violence to a child was admitted to show defendant's intent in the assault which resulted in the child's death. Evidence offered on the theory it proves intent must satisfy the acid test of logical relevancy on the issue. Here, as in *Hudson,* the evidence of prior assaults logically tends to prove intent. The evidence should not be rejected merely because it incidentally proves the commission of another crime when it is within an excepted purpose. *State v. Holbert,* 416 S.W.2d 129 (Mo.1967). The evidence was properly admitted.

The judgment and conviction are affirmed.

All concur.