STATE of Missouri,
Plaintiff-Respondent,

v.

Jesse BEBEE, Defendant-Appellant.

No. 10658.

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 13, 1979.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Carson Elliff, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

Charles Buchanan, Public Defender, Joplin, for defendant-appellant.

FRANK CONLEY, Special Judge.

Jesse Bebee, appellant herein, was charged by information filed April 9, 1976, with felonious assault upon a fellow prisoner in the Jasper County Jail. Appellant was convicted after a trial by jury and sentenced to a term of five years. Appeal is taken from this conviction upon the following grounds:

(1) The trial court erred in overruling appellant's motions for mistrial or continuance based upon the prosecutor's failure to disclose an exculpatory statement in violation of Rule 25.32.

(2) Failure to disclose the exculpatory statement was a violation of due process.

(3) The trial court erred in denying a new trial based upon the ground that the exculpatory statement discovered during the course of the trial constituted newly discovered evidence.

Before discussion of the facts directly relevant to the grounds alleged as the basis for reversal, a brief statement regarding the underlying incident is required. It was undisputed at trial that appellant was involved in an assault upon one Sam Rankin while they were prisoners in the Jasper County Jail. The nature of appellant's involvement was sharply contested however. The victim and another prisoner, Ricky David Barnett, testified that appellant held the victim while he was beaten by Chris Brownfield, another prisoner. Appellant and Chris Brownfield, however, testified that appellant intervened only to stop a fight between Brownfield and Rankin. Carl Greeson, the chief jailer, testified that appellant had been placed in the cell because it was thought that he would have a "calming effect" on other prisoners.

Turning now to the facts which are directly related to the issues at hand, on January 10, 1977, the public defender filed a motion for discovery on appellant's behalf pursuant to Rule 25.32, requesting of the state, inter alia:

"(6) Any material or information within the possession or control of the State which tends to negate the guilt of the defendant as to the offense charged or mitigate the degree of the offense charged or reduce the punishment."

After filing the motion for discovery the public defender went to the prosecutor's office to seek discovery of information.[1] At the prosecutor's office, the public defender requested and received his client's file. Finding little information in his client's file, he asked the secretary if there were anything in the Brownfield file, a companion case, which was not in appellant's file. In response to this request the prosecutor's secretary went into the prosecutor's office and returned with an inculpatory statement

---

1. The public defender had an agreement with the prosecutor's office whereby the prosecutor made his files available to the public defender. Rule 25.36(B).

(hereinafter State's Exhibit 7) made by Ricky David Barnett. The public defender was given State's Exhibit 7, and told by the secretary that there was no other material in the file other than an information showing the charges in the companion case. State's Exhibit 7, in addition to accusing appellant of holding the victim while he was beaten, contained the following statement:

"Then they got up a thing saying that Rancks [sic] throw [sic] the first paunch [sic]. I signed it because I was a frad [sic] that I would get paunched [sic] to [sic]."

During recess of appellant's trial, the public defender was informed by Carl Greeson, the chief jailer, that the statement referred to in State's Exhibit 7 had been turned over to the prosecutor's office. The public defender then requested that the prosecutor check to see if he could locate the statement. Within 5–10 minutes the prosecutor returned with the statement (hereinafter State's Exhibit 6) and told the public defender that it had been located in the Brownfield file where State's Exhibit 7 had been found.

State's Exhibit 6 contained the following statement:

"Webber [sic] and myself [sic] were sitting talking to Sam Rankin [the victim] when Rankin said come over here Chris. Chris said Ill [sic] be right there. Chris came over Rankin got up when Chris got there Rankin hit Chris and they started swinging at each other. Jesse [appellant] came over and pulled them apart and they kept swinging and kicking at each other. Finely [sic] they were brock [sic] up.

/s/Kenneth R. Garrett
/s/Lorin Weber

Signed on Back by other's [sic] that seen [sic] what Happined [sic]. The rest was aslept [sic]"

On the back appeared the signatures of ten others, including appellant, Kelly Baggerly and James Seifried.

When the trial resumed, the public defender moved for either a mistrial or a continuance to afford an opportunity to interview the witnesses who signed the statement. Both motions were denied. After appellant's conviction, a hearing on appellant's motion for a new trial was held, but the motion was denied.

Rule 25.32(A) provides that:

". . . [T]he state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information within its possession or control designated in said request:

\* \* \* \* \* \*

"(9) Any material or information, within the possession or control of the state, which tends to negate the guilt of the defendant as to the offense charged, mitigate the degree of the offense charged, or reduce the punishment."

In *State v. Stapleton*, 539 S.W.2d 655, 659[4, 5] (Mo.App.1976) the court stated:

". . . [T]he rules of criminal discovery are not a mere etiquette but the festoons of due process. They are meant to allow a defendant a decent opportunity to prepare for trial and avoid surprise. *State v. Johnson*, 524 S.W.2d 97, 101[7] (Mo. banc 1975). . . . Compliance with discovery is not at discretion; the obligation to make answer under the rules is peremptory. Rules 25.32, 25.37; *State v. Buckner*, 526 S.W.2d 387, 392[3, 4] (Mo.App.1975)."

Thus, the first inquiry is whether the rules of discovery have been violated.

Respondent argues that in order for the suppression of evidence to be established as error it must be established that the state "willfully" suppressed the evidence. The cases cited by respondent are not on point. The correct rule is stated in *State v. Dayton*, 535 S.W.2d 469, 477[14] (Mo.App.1976):

"The duty to disclose, whether under Brady or Rule 25.32, rests on the prosecutor, and [if] the material and information are within his possession or control, the cause of his failure cannot soften the sanction."

■ The respondent, like the trial court, places considerable weight upon the fact that an agreement existed between the prosecutor and the public defender, whereby the prosecutor agreed to open his files for inspection. It is argued that this constitutes compliance with Rule 25.36 [2] and that the sanctions under Rule 25.45 [3] are therefore inapplicable. Respondent's contention, however, ignores the fact that the duty to disclose is placed upon the prosecutor. *State v. Dayton,* supra. Even in the absence of a request, the prosecutor has an affirmative duty to disclose exculpatory evidence. *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *State v. Abernathy,* 525 S.W.2d 414, 416[1] (Mo.App.1975). In this case the public defender made a written request for disclosure as required by Rule 25.32 and attempted to obtain discovery of the information, but was informed by the prosecutor's secretary that the file contained only State's Exhibit 7. Respondent seeks to absolve the state of its responsibility to disclose by claiming that the secretary was unauthorized to speak on such matters. The record reveals, however, that the door to the prosecutor's office was closed, and that the public defender had assumed that the secretary had consulted with the prosecutor when she went into the office to obtain the file. Moreover, if the prosecutor's staff undertakes his duty to disclose without authority to do so it is the prosecutor who should suffer the consequences. The manner of discovery utilized in this case necessarily creates a risk of nondisclosure. When such nondisclosure occurs the state has failed to comply with the rules of criminal discovery.[4] Cf. *State v. Dayton,* 535 S.W.2d 469, 477[14] (Mo.App.1976).

Having concluded that the prosecutor's office failed to comply with the rules of discovery, the question remains whether the appellant is entitled to a new trial because of the nondisclosure. The mere failure to disclose does not in and of itself entitle appellant to a new trial; it must be shown that the nondisclosure resulted in fundamental unfairness, see *State v. Davis,* 556 S.W.2d 45, 48 (Mo. banc 1977); *State v. Harrington,* 534 S.W.2d 44, 48 (Mo. banc 1976); *State v. Helms,* 559 S.W.2d 587, 590 (Mo.App.1977); *State v. Broyles,* 559 S.W.2d 614, 615 (Mo.App.1977), or that the trial court abused its discretion in refusing to apply a proper sanction under Rule 25.45. *State v. Davis,* supra.

■ As the rules of discovery are the embodiment of due process, the guidelines set by *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) are instructive. In *Agurs* the Supreme Court

2. Rule 25.36 provides:

"Unless otherwise ordered by the court, disclosure under Rules 25.32 through 25.35 shall be:

(A) In a manner agreed to by the state and the defendant, or

(B) By the party making disclosure notifying opposing counsel that the material and information to be disclosed may be inspected, obtained, tested, copied or photographed at a specified time and place and whether suitable facilities are available.

3. Rule 25.45 provides:

"If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other orders as it deems just under the circumstances. Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court."

4. Although Rule 25.36 permits the prosecutor to produce his file and thereby relieve himself of the necessity of judging the exculpatory value of each item therein, producing the file is not compliance in and of itself. The request for discovery may encompass items not within the file and therefore require further disclosure. In this case there is no evidence of what was in the file when the public defender sought discovery. State's Exhibit 6 may not have been in the prosecutor's file at that time. The Missouri Bar CLE series on criminal law suggests that defense attorneys should inventory the file and retain a record. While this is certainly sound advice, the burden of showing what was in the file and thereby produced should be upon the prosecutor. Merely handing over a mass of papers leaves no record of compliance. If a document is later found in the file, nondisclosure is the only reasonable presumption.

concluded that the test for fundamental unfairness may vary depending upon the cause of the government's failure to disclose. Where, as in this case, there is merely a general request for "anything exculpatory" and the prosecutor innocently fails to disclose, due process requires reversal only "if the omitted evidence creates a reasonable doubt that did not otherwise exist . . . ." *United States v. Agurs, supra,* at 427 U.S. 112, at 96 S.Ct. 2402. This test also applies to nondisclosure under the rules of discovery. See *State v. Helms, supra.* In *Helms* the court stated at 590:

"The question to be decided is whether or not the failure to produce as required by the rules results in a fundamental unfairness to the defendant. *State v. Moten,* [542 S.W.2d 317 (Mo.App.1976)]; *State v. Buckner,* [526 S.W.2d 387 (Mo. App.1975)]; *State v. Johnson,* [524 S.W.2d 97 (Mo. banc 1975)]; *State v. Mitchell,* 500 S.W.2d 320 (Mo.App.1973). Whether prejudice results in any given case from the State's failure to produce, upon request, evidence favorable to the defense depends upon the nature of the charge, the evidence presented by the State, and the role that nonproduced evidence would likely have played. *State v. Dayton,* 535 S.W.2d 469 (Mo.App.1976). The nonproduced evidence must be of a character to raise a reasonable likelihood that it would have affected the result, if known at the trial. *State v. Dayton, supra.*"

At the hearing on appellant's motion for new trial, the trial court heard the testimony of two witnesses, Baggerly and Seifried, who had signed State's Exhibit 6. At the close of the testimony the trial court concluded:

"I admit the testimony of Mr. Baggerly and Mr. Seifried might very well have been sufficient for the jury to find Mr. Bebee not guilty, but I can't see the failure to put them on is anybody else's fault but the Defendants [sic]."

■ This court need not weigh the evidence to determine if the test has been met. The trial judge, who heard the testimony and observed the witnesses, has himself concluded that the testimony was of some importance. In addition, it was not argued on appeal that the evidence was not adequate to raise a reasonable doubt which did not otherwise exist, therefore the test must be considered satisfied.

■ Notwithstanding the importance of the evidence, the state finally contends that the conviction should be affirmed because the trial court found that the names of the witnesses were as readily available to defense counsel as they were to the state. It is apparent from the record, however, that the trial court relied upon a mistaken understanding of the facts in arriving at its conclusion. First, the trial court presumed, without any support in the record, that the public defender could have obtained the names of the witnesses by simply inquiring at the jail. In oral argument, however, it was revealed that at the time the public defender conducted his investigation the list of prisoners in the cell was not available. Moreover, due to multiple markings on the exhibits, the trial judge appears to have mistakenly understood that the public defender had received State's Exhibit 6 some nine days before the trial, but failed to request a continuance until the time of the trial. In fact, the public defender had not seen State's Exhibit 6 until the day of the trial, at which time it was of little use to counsel since its primary value was in its disclosure of possible witnesses.[5]

Although it may be assumed that a substantial investigation would have disclosed to defense counsel the names of most if not all of the witnesses who signed State's Exhibit 6, there is no requirement in Rule 25.32 that the information not be available by other means. Indeed one of the implicit reasons for the duty to disclose is the recognition that defense counsel often lack the investigatory resources of the state. A re-

---

5. If the state's position were accepted, this court would be in the position of affirming a conviction because the failure to discover crucial evidence was due to defense counsel's incompetence.

quirement that information sought by defense counsel not be available elsewhere would largely strip the rules of discovery of their purpose of helping defense counsel prepare for trial. See *State v. Johnson,* 524 S.W.2d 97, 101[5] (Mo. banc 1975); *State v. Stapleton,* 539 S.W.2d 655, 659[4] (Mo.App. 1976).

 The court concludes that the state failed to produce State's Exhibit 6 and that such failure resulted in fundamental unfairness to the appellant. The trial court could have cured the failure to produce by a continuance, but declined to do so. Because we find that the trial court's failure to apply an appropriate remedy at the time the nondisclosure was revealed constitutes reversible error, we need not consider appellant's argument concerning newly discovered evidence.

The judgment is reversed and the cause remanded for a new trial.

BILLINGS, C. J., and HOGAN, J., concur.