STATE of Missouri, Respondent,

v.

Curtis Andrew CUTTS, Appellant.

No. WD35928.

Missouri Court of Appeals,
Western District.

June 4, 1985.

Motion for Rehearing and/or Transfer
to Supreme Court Overruled and
Denied July 30, 1985.

Application to Transfer Denied
Sept. 10, 1985.

David Earl Woods, Regional Public Defender, Poplar Bluff, for appellant.

T. Chad Farris, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, P.J., and PRITCHARD and CLARK, JJ.

CLARK, Judge.

Curtis Cutts was convicted in a jury trial of the offenses of murder in the first degree, § 565.003, RSMo.1978 (repealed effective 7/1/84) and armed criminal action and was sentenced to consecutive life terms. Cutts now appeals raising seventeen points of alleged trial error. We find none of the points to have merit and therefore affirm the judgment and sentences.

The facts of the case, recounted with appropriate deference to the verdict, disclosed the following. Cutts had formerly worked as a driver for Midwestern Truck Lines, but in October of 1983 he quit because he was upset over the failure of the company to pay him amounts which he considered to have been due for turnpike tolls and overweight fines. He devised a plan to even accounts by hijacking a Midwestern truck and selling the freight to a salvage yard he had contacted for that purpose.

On November 22, 1983, after previous unsuccessful attempts to hijack a Midwestern truck, Cutts in the company of Ray Bibb and Melissa Wagner left St. Louis in a rented car and drove to Sheffield, Alabama. Cutts knew that Midwestern trucks were dispatched there regularly to pick up loads of aluminum to transport to St. Louis and points north. En route to Sheffield, Cutts and Bibb borrowed a 9 millimeter handgun from an acquaintance because the .22 caliber gun Cutts already had was considered not to be of sufficient size to carry off a truck hijacking. Bibbs bought the special ammunition the gun required at a hardware store near south St. Louis. As later events disclosed, that ammunition purchase was one of the items of evidence leading to apprehension of the suspects.

Cutts and Bibb had concocted a plan to stop the truck they intended to hijack by throwing paint at the windshield. When they reached Sheffield, they stopped at a discount store and bought the paint. Next, they took a position outside the aluminum plant to await a victim. Soon, a Midwestern truck came out of the plant and the hijackers followed. The paint throwing ruse was employed, but the truck did not stop. Instead, the driver sounded his horn and apparently attempted to warn other truckers. The trio of hijackers continued to follow the Midwestern truck to near Memphis, but finally abandoned the effort.

After spending the night in the Memphis area, Cutts, Bibb and Wagner drove back to Sheffield on November 23 to await another truck leaving the aluminum plant. The next truck which departed on the northbound trip was driven by Kenneth Wood, the ultimate victim of the homicide. Cutts and his companions followed Wood's truck and again attempted to splash paint on the windshield. This time they were also unsuccessful because the thrown paint hit the trailer and was evidently unnoticed by the driver. As an alternate means for stopping the truck first Bibb and then Cutts shot at the tires on the trailer with the handgun. This also failed to stop the truck, evidently because of the poor marksmanship of Bibb and Cutts. Wood drove on through the night until he reached a rest area near Cape Girardeau. Despite the previous incidents, Wood seems to have been unaware of the attempted hijacking or that the Cutts group had followed him from Alabama. After spending about three hours at the rest stop under observance by Cutts and the others, Wood resumed his trip north with the hijackers following.

At a point north of Cape Girardeau, Cutts again attempted to bring the Midwestern truck to a stop, this time with success. While following the truck, Cutts flashed his automobile lights and Wood brought his truck to the shoulder. He left the truck cab and was immediately shot three times by Bibb. Cutts and Bibb

dragged the body into the woods where more shots were fired. Cutts removed Wood's identification and he and Bibb drove off in the truck. Wagner followed in the rental car. The group went to St. Louis, Cutts parked the truck and the three went to their houses for Thanksgiving. When Cutts returned later to dispose of the aluminum, he found police inspecting the truck. He abandoned any prospect of reaping any benefit from a sale of the salvage and left the scene.

Bibb was arrested December 1, 1983. His statement implicated Cutts and he was arrested the following day. Cutts waived his right to counsel and to remain silent. He gave a statement substantially in agreement with the facts stated above which also conformed to accounts by Bibb and Wagner. Cutts also gave a statement to the F.B.I. which had been investigating interstate truck hijackings. A number of shell casings were recovered at the scene of the killing and these shells were identified as of the rare type of ammunition which Bibb had purchased November 22 on the way to Alabama.

In his first point, Cutts complains that the composition of the panel from which the trial jury was chosen was dominated by women thereby denying him the opportunity for a fair trial by an impartial jury. He cites no authority supporting the point except the Sixth Amendment to the United States Constitution and Article I, § 18(a) of the Constitution of Missouri. We assume the point seeks to contend that the jury was not drawn from a fair and representative cross-section of the community. The oral motion at trial merely asserted that a female dominated jury would be more sympathetic to the victim's widow and that the gender imbalanced panel should thereby be quashed.

This type of jury venire challenge has been ruled on numerous occasions, most recently in *State v. Harris*, 670 S.W.2d 73, 80 (Mo.App.1984). It was there said that those who bring the charge of an unconstitutionally composed jury panel carry a heavy burden and must present evidence to prove, among other elements, that underrepresentation of a distinctive community group is the product of systematic exclusion of the group in the jury selection process. In this case, appellant offered not a word or line of evidence to show that males were systematically excluded from jury panels in Cole County. The point is devoid of merit and is summarily denied.

Appellant's statement of his second point is verbose in the extreme, but reduced to its essentials, the point contends statements given by Cutts to law officers should have been suppressed because they were the product of threats and coercion.

Cutts was first interrogated for some two hours during the early afternoon on the day of his arrest. He was advised of his rights and waived the right to an attorney and the right to remain silent. The interview resulted in a statement signed by Cutts in which the full details of the crime were recounted. A second statement was obtained three days later when Cutts was questioned by Lummus, an F.B.I. agent. The second interrogation was preceded by another rights waiver. According to the officers, Cutts was eager to talk about the crime and gave no indication of being tired or under the influence of intoxicants or drugs. At the time the statements were obtained from Cutts, he was twenty-three years old and had a high school education and several college course credits.

The principal complaint appellant makes of duress in procurement of the first statement focuses on remarks of officer Keathley. He says Keathley told him Bibb and Wagner had already given statements implicating him in the crime and, at the same time, Keathley described the range of punishment for capital murder as including death in the gas chamber. Cutts argues that he gave the statement in the hope of avoiding the gas chamber. The fact that Cutts' companions had given statements naming Cutts as a co-participant was true as was the description of possible punishment.

■ In *State v. Stubenrauch*, 503 S.W.2d 136 (Mo.App.1973), the defendant was told during questioning that other implicated persons had given statements associating defendant with the arson being investigated. The representation was untrue. In response to defendant's claim that the confession thereafter obtained should have been suppressed because defendant's will was overborne by trickery, the court held the artifice used by the police was insufficient to make the statement involuntary if the accused is otherwise fully advised of his rights and makes the statement voluntarily. To like effect was the decision in *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). It follows upon these authorities that if the interrogating officer accurately informs the accused of inculpatory statements given by accomplices and also correctly describes the range of punishment, those representations standing alone cannot operate to convert an otherwise voluntary confession into a coercive and inadmissible confession.

■ In this case, the trial judge heard evidence on Cutts' motion to suppress the confession and concluded that the statement was voluntarily made. The question on this appeal is whether the evidence was sufficient to sustain that finding by the trial judge. *State v. Dixon*, 655 S.W.2d 547, 554 (Mo.App.1983). There is no single fact which tips the scales in testing voluntariness of a statement given under police questioning. Review is under the totality of the circumstances to discover if improper action had an overbearing effect on the will of the accused. *State v. Brydon*, 626 S.W.2d 443, 449 (Mo.App.1981). If conflicting evidence bears on the voluntariness of the statement, its admission by the trial court is a matter of discretion not to be lightly disturbed. *State v. Flowers*, 592 S.W.2d 167, 170 (Mo. banc 1979).

■ Apart from his complaint that reference to the gas chamber and the information that Bibb and Wagner had confessed "got to him" and made him apprehensive about his prospects, Cutts points to nothing in this record demonstrating physical or psychological coercion. The questioning was comparatively brief considering the circumstances of the case, it was conducted at mid-day, Cutts had sufficient education to know and appreciate the rights explained to him under Miranda and he presented no objective manifestations of physical or mental impairment. Ample evidence supports the trial court's rejection of Cutts' contention that his first inculpatory statement was involuntary.

As to the second statement given in response to F.B.I. questioning, Cutts says that statement was involuntary because it was given only after the first statement had been procured and upon the premise that having once confessed, any right to remain silent had been effectively forfeited. This argument depends, of course, on success in the attack upon the first statement as a product of coercion and duress. The second statement added little if any new material. The ruling that the first statement was properly admitted in evidence necessarily requires that the essentially duplicative second statement be also accepted as voluntary.

The third point addresses evidence adduced by the state that on October 9, 1983 and again on November 8, 1983 Cutts, Bibb and Wagner unsuccessfully attempted to hijack Midwestern freight trucks. Appellant says the evidence was improper impeachment of his character and should have been excluded. To the contrary, the evidence was proper because it tended to prove Cutts' purpose and motive in a plan of escalating violence designed to satisfy at any cost his perceived grievance against Midwestern.

■ Although as a general rule evidence of a separate crime not charged cannot be introduced, there is a well recognized exception where the proof of other crimes tends to establish a common scheme or plan. *State v. Abbott*, 664 S.W.2d 537, 543 (Mo.App.1983). Evidence of other crimes may also be admitted if the evidence establishes motive, intent, and the absence of mistake or accident. *State v. Malady*, 669 S.W.2d 52, 56 (Mo.App.1984). Whether

evidence of other crimes falls within the exception is determined by whether the evidence is logically relevant to the excepted purpose for which it is sought to be introduced. *State v. Reagan*, 654 S.W.2d 636, 643 (Mo.App.1983).

The evidence in the case showed that the victim, Kenneth Wood, was actually shot by Bibb and that Cutts' guilt depended upon proof that Cutts was acting in concert with Bibb in the commission of the felony. Also of prime importance to the state's case was proof that the homicide occurred in the course of implementing a plan devised and directed by Cutts to seek revenge upon the truck line for its failure to pay money Cutts claimed as due. The proof of three prior hijacking attempts which failed due to the ineptness of Cutts and Bibb was admissible because the evidence showed Cutts to have been responsible for urging his companions to persevere in the scheme and to engage in violence motivated by Cutts' anger and frustration. The evidence therefore had a legitimate tendency to establish Cutts' guilt of the charged offense. The trial court properly allowed evidence to be received showing the attempted truck hijackings of October 9 and November 8 as well as the failed attempt on November 22.

In the next successive points four and five, Cutts contends that the trial court erred in overruling his motion in limine to prevent the state from calling the victim's widow as a witness and in denying his motion in limine to suppress two auto rental receipts seized in a search of Cutts' home at the time of his arrest. Neither point presents anything for appellate review because a ruling on a pre-trial motion is interlocutory and, hence, is not an appealable order. *State v. Evans*, 639 S.W.2d 820, 822 (Mo.1982). Ex gratia, we have examined the substance of the two points and find them without merit. So, too, is appellant's sixth point, the claim that prosecution for armed criminal action in conjunction with another felony constitutes double jeopardy, unworthy of comment or discus-

sion. *Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

In point seven, Cutts asserts direct evidence from Melissa Wagner to the effect that she had entered a plea of guilty to first degree murder violated a pre-trial order and prejudiced his case through guilt by association. The fact was both Wagner and Bibb had pled guilty but neither had been sentenced. Cutts relies on the rule stated in *State v. Stearns*, 617 S.W.2d 505 (Mo.App.1981) that credibility of a witness may not be challenged by showing conviction of a criminal charge if sentence has not been imposed. He argues that Wagner's evidence was bolstered when the jury learned of her guilty plea in the same crime on the theory that she would not have confessed if the account of Wood's murder were fabricated.

Appellant misstates the evidence and the content of the pre-trial ruling. The state desired and was entitled to show that Wagner's testimony was not the product of leniency or a plea bargain. At pre-trial, the court indicated that Wagner could be questioned as to the charge brought against her and the absence of any expectation on her part that the charge would be reduced. These questions, and no more, were asked at trial. Wagner's conviction was not mentioned. It may well be, as Cutts argues, that the jury would infer guilt on Wagner's part, or even the prospect of conviction, but that inference is drawn with equal or greater force from Wagner's exposition of her own complicity in the crime. There was no error in bringing to the jury's attention the absence of any plea agreement proffered in consideration for Wagner's testimony.

Appellant next complains that the court erred in the admission in evidence of Bibb's driver's license. The point is grounded on the claim that the exhibit was irrelevant and immaterial in that the witness to whom it was presented could not identify appellant or associate appellant with the crime. Cutts claims prejudice in that the connection between the ammunition purchased and the shell casings found at the scene of the killing served to tie Bibb's otherwise

unidentified companion in the store directly with the homicide.

The driver's license was exhibited in the course of questioning the state's witness, Dennis, the attendant at the hardware store where Bibb purchased the ammunition for the 9 millimeter gun. The license was identified by Dennis as the one shown to him by Bibb when he bought the cartridges. Dennis also testified that Bibb was in the company of another black male, not otherwise identified. Dennis had sought the identification, as he was required to do, and made a record of the date and the customer. Although Dennis recognized Bibb from his name and the photograph on the license, he was unable to say that it was appellant who was in company with Bibb.

The question of whether the driver's license was competent evidence and admissible turns on whether the evidence tended logically to prove a fact in issue or to corroborate other relevant evidence relating to a material matter. *State v. Allbritton*, 660 S.W.2d 322, 328 (Mo.App. 1983). The issue of relevancy is generally left to the discretion of the trial judge, reviewable only for abuse. *State v. Inman*, 673 S.W.2d 483, 486 (Mo.App.1984). Here, there was a sufficient basis in fact to admit the exhibit. The license established the basis for Dennis's identification of Bibb which, in turn, connected the ammunition purchase with the shells used to kill Wood. Moreover, the exhibit corroborated the testimony of Wagner that the group had stopped at the hardware store en route to Alabama to purchase the ammunition. We find no abuse of discretion in admission of the exhibit.

In associated evidentiary points numbered nine, eleven, twelve and thirteen, appellant contends other non-relevant exhibits were erroneously admitted. The exhibits were photographs of the corpse and of other evidence at the crime scene, the steering wheel from the victim's truck, a fingerprint card and the victim's bloodstained eyeglasses. The photos are contended to be gruesome and inflammatory and hence unnecessary when weighed against their prejudicial effect in a case where the cause of death was not contested. The card ostensibly bearing appellant's fingerprints and the steering wheel which bore a print impression of appellant's right middle finger are challenged for relevancy on the basis of identification and chain of custody. The blood stained eyeglasses are contended to be irrelevant on the same basis as asserted to exclude the photographs in point nine.

Appellant's complaint about admission of the photographs and the eyeglasses contends only that the exhibits were so gruesome they could have blinded the jury to other evidence in the case. He does not say they did nor does he offer any suggestion of what other evidence may have been obscured by the exhibits. Most importantly, appellant makes no argument that the facts proved by the photographs and the eyeglasses were established by other evidence or that the only purpose they served was to inflame the jury.

We have examined the exhibits in question and find them to be no more offensive and shocking than would be expected where the object is a corpse repeatedly shot with an automatic weapon. As was noted in *State v. Clemons*, 643 S.W.2d 803, 805 (Mo. banc 1983), accurate portrayals of a shocking and gruesome crime will always be inflammatory. The issue is, where objection to such exhibits is made, whether the evidence is relevant to prove some element of the case.

Under the handicap of no suggestion from appellant on the subject, we have reviewed the record to ascertain whether the exhibits were relevant or merely repetitious. It is indeed true that prosecutors do on occasion offer inflammatory matter designed solely to arouse the passion of the jury against the defendant and by so doing, incur the possibility of reversal and an unnecessary retrial of the case. That situation is not found present here. An important aspect of the state's case was its claim that Cutts was answera-

ble for the homicide because after Bibb had shot the victim near his truck, Cutts helped drag the body into the woods where additional shots were fired. The photographs and the eyeglasses demonstrated these facts and served to corroborate the testimony of witness Wagner. The eyeglasses were similarly relevant to confirm that Wood was shot first at the location where the glasses were found by the highway. Exhibits which are gruesome are not to be excluded from evidence solely on that account if they constitute otherwise relevant evidence. *State v. Clemons*, supra.

The points concerning the fingerprint card and the steering wheel are obscure at best because the actual contentions appear to challenge chain of custody and authentication. These are scarcely matters reviewable for relevancy of the evidence. As we perceive the combined argument on points eleven and twelve, appellant says the jury could have compared the fingerprint card impression with the latent print developed from the steering wheel and have concluded that Cutts drove the truck after the murder of Wood. He says the evidence was irrelevant because the print card was not properly authenticated and the chain of custody of the steering wheel removed from Wood's truck did not exclude the possibility of tampering.

■■■■ As to identification of the print card, the complaint that the witness who testified was not the same person who took the print lacks even colorable merit. The exhibit was fully qualified for admission in evidence under § 490.680, RSMo.1978 and appellant's counsel conceded as much at trial. It was unnecessary to qualify the exhibit that the officer who took the fingerprints appear and testify. As to the chain of custody objection to admission of the steering wheel, the review of the trial court's decision is again dependent upon a standard of deference to the proper exercise of the trial court's discretion. *State v. Hebb*, 595 S.W.2d 47 (Mo.App.1980). Evidence sufficient to establish the custody chain need not exclude every possibility of disturbed possession, only a reasonable as-

surance. *State v. Ashley*, 616 S.W.2d 556 (Mo.App.1981). The evidence here was adequate to support the decision by the trial court to admit the exhibit.

■■■ Point ten in a frivolous claim of error contends that the trial court should not have permitted the jurors to read a copy of appellant's signed statement at the conclusion of testimony by the F.B.I. agent who took the statement. He says the statement should have been withheld until after the jury had commenced deliberations because "the copies were cumulative and may have caused the jury to form an opinion" before actual deliberations commenced. It is, of course, perfectly obvious that a signed confession by the accused will bear upon the ultimate opinion which the jury reaches, but it does not also follow, as appellant presumes, that the jury will not observe the court's instruction to withhold a determination of guilt or innocence until the case has been submitted. That instruction was given here, immediately after the jurors had read the statement. There is no reason to believe they did not follow the instruction.

■■■ In his point fourteen, Cutts takes issue with the qualifications of David Warren, an expert witness called by the state. The principal objections made as to this witness are that he lacked academic credentials and that he was permitted to testify about his acceptance as an expert witness in other cases. The mere fact that a witness may have attained knowledge by practical experience rather than by scientific study or research does not impair his credentials as an expert if he has knowledge which will aid the trier of fact. *State v. Garrett*, 682 S.W.2d 153, 155 (Mo.App. 1984). Witness Warren was fully qualified to testify as an expert under these standards. Cutts may not complain about proof that Warren had testified as an expert in other cases. The defense put Warren's qualifications in issue at which point his prior participation in cases and his acceptance as an expert was relevant.

Points fifteen and sixteen duplicate under a guise of restatement the same con-

tentions made and ruled adversely to appellant on the subjects of evidence of prior hijacking attempts and the fingerprint impression from the truck steering wheel. These points, as were their companions, are devoid of merit.

 In his final point, appellant argues that his consecutive life sentences violate § 557.036.3, RSMo.Supp.1984 in that the term of punishment exceeds the sentence imposed by the jury. The contention seems to be that life imprisonment stands as a maximum not to be exceeded by adding subsequent terms. No authority is cited for the proposition. We reject the claim. A trial court has discretion to determine if sentences should run concurrently or consecutively. *Johnson v. State*, 607 S.W.2d 808 (Mo.App.1980).

The judgment and sentences are affirmed.

All concur.