**STATE of Missouri, Respondent,**

**v.**

**Stuart Brent GHAN, Appellant.**

**No. WD 37541.**

Missouri Court of Appeals,
Western District.

Nov. 4, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Dec. 23, 1986.

Gary L. Stamper, Bear, Hines, Thomas, Dierkes & Stamper, Columbia, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and DIXON and LOWENSTEIN, JJ.

SHANGLER, Presiding Judge.

The defendant Ghan was convicted of Assault in the Second Degree, a class C felony [§ 565.060, RSMo Supp.1986], Armed Criminal Action, a felony [§ 571.015, RSMo 1978], and of felonious restraint [§ 565.120, RSMo 1978], a class C felony. [The jury returned sentences of three years and five years, and a six-months term in the county jail, respectively. The sentences of three years and five years were imposed to run consecutively, and the jail term was made to run concurrently with the other sentences].

The victim was Teresa Stutte, and the site of the crime was a parking lot in a shopping center in Columbia, Missouri. On November 30, 1984, at about 6:25 p.m., the victim entered the Wal-Mart store there to shop and thereafter returned to her car. She noticed a van parked next to her vehicle occupied by a man [later identified as defendant Ghan]. As she was about to enter her car, Ghan, map in hand, asked her for directions. The victim walked over to the van, and the man told her he was attempting to locate Waltz Street. She undertook to give him directions on the map, but as she turned her back for a moment to point to the route on the map,

the voice of the man "became really devious," and said something to the effect: "I've got a better idea," or "I've got a better plan." She felt his arms from behind, come around her body—her waist and her neck—so she bent down to extricate herself. She broke loose and ran directly to the Wal-Mart store. It was then she felt blood dripping on her hand: "It felt like somebody had taken a thumbnail and just took a chunk of my face out." The wound bled profusely, so the victim asked the store personnel to call not only the police, but also an ambulance. She was taken to the hospital and treated at the emergency room there by Dr. Templer. The victim described the assailant to the police as well as the van he occupied.

The victim promptly picked out the defendant Ghan as the assailant from an array of photographs. At the trial she was "absolutely positive" Ghan was the culprit. After the offense, and then again at the hospital, the victim rendered a description of the defendant in detail. She also identified his van.

The defendant contends that the evidence was not sufficient to submit Assault in the Second Degree [1] because the "serious physical injury" component of § 565.060 was not proven. That section provides:

> 1. A person commits the crime of assault in the second degree if he:
>
> . . . .
>
> (3) Recklessly causes serious physical injury to another person; . . . .

The offense was submitted to the jury in the terms of the statute under MAI–CR 2d 19.04.2, Assault in the Second Degree. The submission included as a separate direction the definition of *serious physical injury* in the terms of MAI–CR 2d 33.01 [and § 556.061(26)]:

> As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of

---

**1.** The information charged Assault in the First Degree under § 565.050, a class A felony, but the prosecution submitted an Assault in the Second Degree under § 565.060, a class C felony. The class A felony requires as a proof that "the

actor inflicts a serious physical injury on the victim." The class C felony requires as a proof that the actor "recklessly causes serious physical injury" to the victim.

death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

The reckless infliction of *serious physical injury* rather than *physical injury* distinguishes an assault in the second degree [§ 565.060] from assault in the third degree [§ 565.070].

The defendant argues that the proof sufficed to submit only as Assault in the *Third* Degree, because the reckless infliction of physical injury,[2] rather than *serious* physical injury, was the offense proven. He argues that the evidence, taken most favorably to the prosecution, shows that the victim suffered a facial laceration eight centimeters in length and, at most, an inch in depth, was treated as an out patient, and was discharged. There was no evidence that the injury entailed a risk of death, or caused any "serious permanent disfigurement" of the victim. That argument understates the evidence as well as the inferences due the jury verdict. The injury was described by Dr. Templer who treated the victim at the emergency room as a "gaping wound" from which blood issued profusely from an artery, as well as lesser vessels. It was inflicted by a "very sharp" object which, the physician explained, cut some of the facial muscles. The wound was sufficiently deep as to require a two-hour surgery to repair the wound, layer by layer, by a procedure which used "dozens and dozens" of stitches. The victim was given morphine for the pain, but the pain from the injury still recurs. It still pained at the time of trial more than five months later, and the injury throbbed occasionally. A scar on her face was still palpable.

■ The facial disfigurement, already five months in duration at the time of the trial, proves the *serious physical injury* component of the Assault in the Second Degree charge against the defendant under § 565.060(3). A *serious physical injury* under the statute is proven, among other modes, by a *serious disfigurement* by a *physical injury* that causes an impairment of bodily function. An accused may be convicted for the infliction of *serious physical injury* although the assault causes no residual damage. *State v. Emory*, 643 S.W.2d 24, 27[3] (Mo.App.1982). The duration of an injury bears on how serious the injury is, in physical terms. An impairment of the jaw for six weeks was sufficient proof to allow the jury to find that the function of the body was impaired, so that the injury was *serious* within the statutory definition. *State v. Mentola*, 691 S.W.2d 420, 422[5] (Mo.App.1985). An injury to the face of a child which required seven stitches was sufficient to convict under the statutory definition of serious physical injury—even without present impairment of a bodily function. *State v. Teal*, 624 S.W.2d 122, 124[1] (Mo.App.1981). Thus, the gist of a *serious physical injury* [within the definitions of § 556.061 and the assault statutes] is an aggravated *physical injury*. See § 556.061, RSMo 1978 and Comment to 1973 Proposed Code. When the usual concomitant of an aggravated injury is the impairment of a bodily function, therefore, the "impairment of the function of any part of the body" component of *serious physical injury* definition § 556.061(26) is proven. In those terms, the assault on the victim Stutte was an aggravated physical injury, and by the very nature of the wound impaired the function of that part of the body during the period of healing. A facial disfigurement, the residue of the surgical repair of a deep and bloody gouge inflicted by a sharp instrument, and which endures for five months, therefore, proves a *serious physical injury* both as a *serious disfigurement*[3] and

**2.** MAI–CR2d 33.01, defines *physical injury* in terms of § 556.061(20):

> Means physical pain, illness, or any impairment of physical condition.

**3.** The argument the appellant makes that the evidence must prove a *serious permanent disfigurement* rather than merely a *serious disfigurement* to prove the *serious physical injury* component of Assault in the Second Degree is mistaken. The term "permanent" was deleted from the definition by the 1983 amendment of § 556.061(24), which renumbered and rendered the definition. Laws 1983, p. 923, S.B. No. 276, § 1. The amended definition governs the charge of the offense against the defendant.

as a *physical injury* which impairs a bodily function under § 565.060(3) and § 556.061(26).

The defendant contends next that the refusal of the trial court to require the prosecution to give discovery under Rule 25.04 violated both the rationale of this criminal procedure as well as the constitutional principle of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The defendant Ghan requested, and had, of the prosecution the mandatory disclosures enumerated by Rule 25.03; the names and addresses of witnesses for the prosecution, the written or oral statements of the defendant, the items of exhibits—among the others. The defendant then moved under Rule 25.04 for the order of the court that the prosecutor disclose information and material not covered by Rule 25.03. The disclosures under Rule 25.04 do not issue as of course [as under Rule 25.03], but only for good cause:

> 25.04 Misdemeanors or Felonies—Disclosure by State to Defendant by Court Order Requiring a Showing of Good Cause
>
> (A) The defense may make a written motion in the court having jurisdiction to try said case requesting the state to disclose material and information not covered by Rule 25.03. Such motion shall specify the material or information sought to be disclosed. If the court finds the request to be reasonable, the court shall order the state to disclose to the defendant *that material and information* requested which is found by the court to be *relevant and material to the defendant's case.* [emphasis added]

In the course of discovery [so counsel for defendant argued to the court in the presentation of the Motion for Disclosure under Rule 25.04], counsel learned from the reports of the police investigation of the case that the *modus operandi,* the vehicle,

and "the description," of the assault upon victim Stutte resembled another assault. In that earlier incident, counsel represented to the court, "the victim in that assault could not identify the Defendant." It was prompted by that coincidence of *modus operandi,* "description," and nature of the assault, that counsel for defendant moved under Rule 25.04 for disclosure by the prosecution, among other material and information, of

> The names and last known addresses of any persons of whom [sic] the State alleges to have been the victim of an assault at the hands of defendant in the area of the Wal-Mart Discount Store located at 405 Knifong Boulevard, Columbia, Boone County, Missouri. Particularly, defendant requests the street address and telephone number of Lynn Stringham.[4]
>
> Any reports or statements of victims or police officers made in connection with Case No. 84011543.

It does not appear from the report of the brief proceedings before the circuit judge on the Motion for Disclosure under Rule 25.04 that any of these sources—the police dossier in Case No. 801153, or any of the photographs or other contents—were formally presented to the court. The prosecution conceded to the court, however, that a "similar-type incident" occurred at that site two months earlier, and that Ghan was among those whose photograph was exhibited, but not identified by *that* victim, *not* the victim here. It was the contention to the court, however, that the fact that the victim of that earlier assault was unable to identify Ghan as the assailant simply was not relevant or material to the defense, and so the information the motion sought was not subject to disclosure either under Rule 25.04 or under the constitutional principle of *Brady.*

---

4. The relevancy of the Wal-Mart Discount Store location, we surmise, derives from the coincidence that both the earlier assault [for which, apparently, defendant Ghan was *not* charged] and the later assault [for which defendant Ghan was charged] occurred there. Case No. 84011543, we surmise once again, describes the official police dossier of the earlier assault. We surmise as well that Lynn Stringham was the victim in the earlier assault.

The rules of criminal discovery are designed to ensure to an accused a decent opportunity to prepare a defense free of surprise, and so are the trappings of due process. *State v. Wilkinson,* 606 S.W.2d 632, 636[6, 7] (Mo. banc 1980); *State v. Stapleton,* 539 S.W.2d 655, 659[4, 5] (Mo. App.1976). Another constitutional principle, independently of formal rule or procedure, imposes on a prosecutor the duty to disclose to a criminal defendant evidence that is material either to guilt or punishment, even if useful only to impeach the credibility of the prosecution witnesses. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). The prosecutor is bound to act even in the absence of an articulated request by the defendant, and the neglect of that duty constitutes a violation of due process. *United States v. Agurs,* 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976); *State v. Bebee,* 577 S.W.2d 658, 661[4] (Mo. App.1979).

■ The duty of a prosecutor to disclose under the rules of criminal discovery and the principles of *Brady* and *Agurs,* although in each instance grounded on the obligation to seek justice and not merely to convict, is evoked in each instance by a different consideration. The duty of a prosecutor to disclose under Rule 25— whether peremptorily under Rule 25.03 or for good cause shown under Rule 25.04— operates only upon the timely request of the defendant. Rule 25.02. The prosecutor, moreover, is subject to the sanctions of the rules only for noncompliance with the rules. *State v. Buckner,* 526 S.W.2d 387, 392–393[7] (Mo.App.1975); Rule 25.16. The prosecutor is subject to sanctions under *Brady* and *Agurs,* however, for nondisclosure or suppression of evidence material to the defense, request or not.[5] The prosecutor here, however, has refused nothing, and hence the sanctions of Rule 25.16 do not apply. The prosecutor has suppressed nothing, and hence *Brady* and *Agurs* do not apply.[6] It is the order of the trial court that the defendant lacks good cause under rule 25.04 that denies him access to the information and material he seeks. It is the propriety of the adjudication of the court under Rule 25.04 we review, therefore, and not the conduct of the prosecutor under Rule 25 or under *Brady* and *Agurs.*

The discretion of the court to order discovery under Rule 25.04 is properly exercised when the disclosure sought is "relevant and material to the defendant's case." The burden to show those elements of good cause rests on the defendant. *State v. Chaney,* 663 S.W.2d 279, 285[6, 7] (Mo.App. 1983). That burden entails a motion which "shall specify the material or information sought to be disclosed," and a request shown "to be reasonable"—that is, a request "found by the court to be relevant and material to the defendant's case."

**5.** It may be that a prosecutor who refuses to give discovery under Rule 25—whether as a mandatory duty under Rule 25.03 or by order of the court for good cause shown under Rule 25.04—faces the same sanction as for a violation of a *Brady-Agurs* duty. *See State v. Johnson,* 702 S.W.2d 65, 73[5, 6] (Mo. banc 1985); *State v. Choate,* 639 S.W.2d 906, 908[4] (Mo.App. 1982). Since either species of official conduct or neglect implicates due process values, that coincidence of sanction follows. Our opinion draws the distinction merely to explain why we owe no response to the contention on appeal that a prosecutor who is protected from response by an order of the court has no duty to respond or disclose under *Brady* and *Agurs.*

**6.** As our opinion recites, the defendant requested, and had, the disclosures due from the prosecutor as of right under Rule 25.03. It was in that course of discovery that the defendant came upon the police file in Case No. 84011543 and knowledge of an earlier assault at the same site as the assault charged against defendant Ghan. Thus, the *existence* of the record of the police investigation in the earlier assault Case No. 84011543, as well as of the site of the crime, the victim, and other incidents reported in the police investigation, were disclosed by the prosecutor and known to the defendant. The nondisclosure of information already known, of course, is not suppression. *State v. Choate,* 639 S.W.2d 906, 909[5] (Mo.App.1982). It was material and information, moreover, acknowledged by the defendant not due for his discovery as a matter of course under Rule 25.03, and was not sought under that procedure. It was discoverable, if at all, for good cause shown under Rule 25.04.

The motion requests to discover the names and addresses of "any persons the State alleges to have been the victim of an assault at the hands of the defendant" at the Wal-Mart site. The motion then requests the address and telephone number of one Lynn Stringham, and any reports or statements of victims or police officer "made in connection with Case No. 840.-11543." The motion then alleges [presumably, as grounds for the relevancy and materiality to the defense of the instant prosecution against defendant Ghan]:

> The material requested by this motion is believed to constitute evidence of third party culpability in that discovery in this case previously received indicates defendant is or was a suspect in numerous other attacks involving the same *modus operandi*. *Counsel for defendant has reason to believe that the other alleged victims were unable to identify defendant as their assailant and such evidence tends to prove that a person other than the defendant committed the crime that is charged.* [emphasis added]

Thus, the relevancy and materiality for the information sought by the motion is simply that other victims of other attacks perpetrated at the same site and in the same mode were unable to identify the defendant as the assailant and so bear to prove that the victim Stutte misidentified Ghan, and that the true assailant, a third person, remained at large. The defendant argues that the information the motion seeks is not only exculpatory, but is valuable to impeach the victim and "to cross-examine the police witnesses on the thoroughness of their investigation."

Whether the motion as alleged, *if proven*, would have sufficed as cause for discovery of the material and information sought by Ghan under Rule 25.04, we need not decide. The "proof" of the motion tendered at the hearing—a single transcribed page of comment and interpolation by defense counsel—neither proved the motion nor responded to it. The information requested, the motion alleged, was relevant and material to the defense in that dis-

covery already concluded indicated Ghan was a suspect "in *numerous other attacks* involving the same *modus operandi*," nevertheless was never identified by any victim other than Stutte, as the assailant—and thus the information sought for discovery bears to prove that the Stutte identification was suspect. The "proof" tendered by counsel was not of "numerous other attacks," but of a single previous attack at the same site; not of a habitual pattern of criminal behavior—a *modus operandi*—but of a single coincidence of similarity; not of numerous suspicions of Ghan by the police, unconfirmed by the identification of the victim, but of a single previous uncorroborated suspicion:

> And prior to Brent Ghan's arrest for this offense, there was another assault and an investigation was conducted and certain information was gained ... And I filed this motion to request the State to disclose to the Defendant the police report pertaining to *that assault*. The reason I have done that is that throughout the police report in the instant case, they refer to how much the description, the modus operandi, the vehicle, and I guess that's the only three items, how similar *the other assault is to this assault*. As I understand it, the victim in *that assault* could not identify the Defendant. [emphasis added]

There was no other "proof" tendered, either by witness or even by any report or document. The prosecutor acknowledged merely that two months before the criminal incident for which Ghan was on trial, Ghan was displayed in a photographic lineup as to a "similar-type incident," but was not identified as the assailant by the victim.

Good cause is shown, and the court is bound to order discovery under Rule 25.04, where the information requested is proven "relevant and material to the defendant's case." Whatever may be the invalidity—as a matter of definition—of a pretrial order to deny discovery, the review of such an order is necessarily *post hoc:* after the case is tried and the defendant suffers conviction without benefit of the evidence

sought for disclosure. *Brady* and *Agurs* lay down the standard of review of *materiality,* but in cases of "the discovery, *after trial,* of information which had been known to the prosecution but unknown to the defense." [emphasis added] *United States v. Agurs,* 427 U.S. at 103, 96 S.Ct. at 2397. That is to say, *Brady* and *Agurs* deal with nondisclosure from the *suppression* of evidence material to the defense. *Agurs* formulates the standard of *materiality* which proves suppression in typical situations and then assigns to each that quantum as comports "with the justice of the finding of guilt." *Id.* at 112, 96 S.Ct. at 2401. The standard of *materiality,* in a case of suppression of evidence, therefore, is that which ensures that the process of adjudication and determination of guilt are fundamentally fair, even without the undisclosed items of evidence. *State v. Thompson,* 610 S.W.2d 629, 632–633 (Mo.1981); *State v. Bebee,* 577 S.W.2d 658, 661[4] (Mo.App. 1979); *State v. Charity,* 637 S.W.2d 319, 323 (Mo. banc 1982).

In this case, the prosecutor suppressed no information, but merely doubted that the matters for disclosure were relevant and material to the defense, and submitted that issue to the trial judge—as Rule 25.04 allows and expects. That rule leaves to the court the reasonableness, and hence the determination whether the information requested is relevant and material to the defense. Since the procedure for criminal discovery—Rule 25.04 no less than Rule 25.03—embodies the fundaments of due process, the sanction of a new trial issues only if the refused disclosure "resulted in a fundamental unfairness or substantively altered the outcome of the case." *State v. Johnson,* 702 S.W.2d 65, 73[6] (Mo. banc 1985); *State v. Royal,* 610 S.W.2d 946, 951[10–13] (Mo. banc 1981). As corollary, the sanction of a new trial issues only when "the undisclosed evidence bears decisively—and not only as corroboration—on the issue of guilt or on the credibility of a witness. The test for prejudice is determined by the nature of the charge, the evidence presented by the prosecution, and the role the undisclosed testimony would likely have played on the return of guilt or punishment." *State v. Wade,* 635 S.W.2d 51, 54 (Mo.App.1982); *State v. Dayton,* 535 S.W.2d 469, 476–478 (Mo.App.1976).

The sense of the argument for disclosure of the police dossier in Case No. 84011543 rests on the premise that the coincidences between the first assault and second assault as to site, mode of commission [asserted, but unexplained] and contemporaneity prove the inference that both crimes were committed by the same person—and since Ghan was presented, but was not identified as the assailant by the first victim, the undisclosed evidence bears to prove that Ghan was innocent of the second assault for which he was convicted. It bears to prove also [the argument goes], that the victim in the second assault, Teresa Stutte, was mistaken in her identification of Ghan as the assailant in the second episode. Thus, the argument concludes, the undisclosed evidence relates decisively on both the issue of guilt and the credibility of the witness and hence fundamental fairness requires a new trial.

The disclosures under Rule 25.04 issue "when found by the court to be relevant and material" to the defense. A fact is relevant to another fact "when, according to common course of events, existence of one taken alone or in connection with the other fact renders existence of the other certain or more probable." Black's Law Dictionary at 1160 (5th ed. 1979). That is to say, evidence which "tend[s] logically to prove a fact in issue or to corroborate other relevant evidence relating to a material matter." *State v. Cutts,* 694 S.W.2d 804, 810[11–13] (Mo.App.1985). Evidence which unnecessarily diverts the trier of fact from the issue for decision is irrelevant. *State v. Taylor,* 663 S.W.2d 235, 239[3, 4] (Mo. banc 1984).

■ The statistic of ordinary knowledge, that assault is not an uncommon event at a shopping center, alone suffices to deprive the coincidence of two assaults within two months at such a site committed by the same means of any efficacy of relevancy to

prove that they were committed by the same assailant. It also deprives the coincidence of any efficacy of relevancy to prove that the identification of Ghan by Teresa Stutte as her assailant in the latter episode was mistaken. Thus, the contents of the dossier of police investigation of that earlier assault, are too removed and speculative to be relevant or material to any element of the defense. There is no constitutional requirement that a prosecutor "make a complete and detailed accounting to the defense of all police investigatory work on a case"—let alone on a superficially coincident, but actually unrelated, case. *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1971). The identification of defendant Ghan by Teresa Stutte as her assailant, moreover, was emphatic, definite and detailed. She spoke to Ghan in full face in clear light when he first engaged her attention. She gave to the police a complete and accurate description of her assailant, promptly picked him out from an array of photographs, and then at trial. The defense does not attack the identification procedures as suggestive or even irregular, but asserts only the coincidence of two assaults as the "good cause" for the disclosure of the police dossier to impugn that identification. The question, however, is fundamental fairness: whether the dossier was material to the defense so that nondisclosure denied Ghan a fair trial or substantively altered the outcome of the case. *State v. Johnson*, 702 S.W.2d at 73. We conclude the contents of that police investigation—that the victim in that earlier assault did not identify Ghan as her assailant—are not relevant or material on the issue of the guilt of defendant Ghan for the assault on Teresa Stutte or on the credibility of her identification of Ghan as her assailant on the Wal-Mart parking area on November 30, 1984.

The defendant contends, finally, that the ruling of the court to sustain the prosecution challenges for cause as to veniremembers Wright, Howard and Sims was error. The voir dire took this course: The prosecutor prefaced inquiry by the compliment to the venire: "The case relies crucially on the eyewitness identification of the victim in this case." He then briefly sketched the evidence of the assault, and asked: "Is there anybody who could not return a verdict of guilty based solely on the testimony of one eyewitness?" Then, this colloquy ensued between members of the venire and the prosecutor.

Prosecutor: Is anybody troubled by the fact that there is just one eyewitness in this case, the victim?

Veniremember Wright: Yeah, that concerns me a little bit in being able to make a decision.

Prosecutor: Do you believe that would affect your ability to judge this case fairly?

Veniremember Wright: I think it might.

Prosecutor: Okay. I appreciate our being honest about that.

Anybody else troubled by that?

Veniremember Howard: Yes. One eyewitness and the minimum sentencing on the first charge, that brings some—

Prosecutor: Okay. Does that trouble you to the point that—

Veniremember Howard: I am not sure; but it does, you know, bring some—It does trouble me to some extent, yes.

Prosecutor: Do you feel like you could set aside what's bothering you and judge this on the evidence and do what you are required of? [sic]

Veniremember Howard: I am not certain.

. . . .

Veniremember Sims: I believe I would have problems on this, yes.

Prosecutor: I can't hear you.

Veniremember Sims: I said I believe I would have problems on this case coming to a fair—

Prosecutor: To the extent that you think it might affect your ability to hear this case?

Veniremember Sims: I think so.

■ The prosecutor then challenged for cause veniremembers Howard and Wright on the expressed indication of "some uncer-

tainty regarding the ability to convict on the basis of single eyewitness." The prosecutor also challenged for cause veniremember Sims "on the basis that she had been a victim of something before who had kind of equivocation and indicated she would prefer not to serve." The defendant argues that order to strike the three—Howard, Wright and Sims—"solely because they expressed a healthy skepticism regarding the reliability of identification by a single victim-eyewitness" created a "conviction-prone jury, unrepresentative of the community and ill-equipped to render a fair and impartial verdict." The order to excuse Sims, however, was on the ground that the veniremember had been "a victim of something before," and not that she could not return a conviction on the testimony of a single eyewitness.[7] The contention of error as to the discharge of that veniremember, therefore, is not presented for our review. *State v. Pospeshil*, 674 S.W.2d 628, 632[1–4] (Mo.App.1984).

What remains is the contention that the exclusion of prospective jurors from service for the disinclination to return a conviction on the basis of the testimony of a single eye-witness denies the defendant the Sixth Amendment right to a jury selected from a fair cross-section of the community. The argument acknowledges that in order to present that constitutional claim, the defendant must show that veniremembers excluded, Wright and Howard, constitute (1) a distinctive class in the community (2) that the representation of this class in the array does not fairly and reasonably relate to their numbers in the community, and (3) that the underrepresentation results from systematic exclusion of the group in the jury selection process. *State v. Alexander*, 620 S.W.2d 380, 384[6–9] (Mo. banc 1981). The argument acknowledges also that in order to qualify as a group, there must be a "common thread running through the group that reflects a basic similarity in attitudes, ideas, or experiences." *State v.*

*Williams*, 659 S.W.2d 778, 780[2] (Mo. banc 1983). The defendant concedes that the challenge and exclusion was not for membership in a race, a gender, or other cohesive segment of the population—but argues, nevertheless, that an exclusion "for a common mode of analytical thought" which shares a perception of "the reliability [unreliability?] and credibility of eye-witness testimony" comes under the same constitutional interdict. That, however, does not describe a *group* in the Sixth Amendment sense—not a cognizable class with attitudes not shared by other segments of the population, but random adherents of a solitary idea. *State v. Spivey*, 700 S.W.2d 812, 814 (Mo. banc 1985).

The person who asserts a constitutional challenge against the composition of a jury sworn for the trial has the burden to show, not only the exclusion of a *group*, but also that the exclusion was systematic. *Id.* at 813[1]. The defendant shows neither the exclusion of a *group*, nor that the exclusion, if of a group, was systematic. The contention of error presents no colorable issue that the jury panel which returned the conviction was unconstitutionally composed. *State v. Cutts*, 694 S.W.2d at 807.

The judgment is affirmed.

All concur.

---

**7.** The court transcript of the voir dire the defendant provides on appeal does not include the full interrogation and response of veniremember Sims, and so does not present any basis for review of the order of the court to excuse that member because "she had been a victim of something before"—the only ground ascribed to exclude her from the jury for cause.