**STATE of Missouri, Plaintiff–Respondent,**

v.

**Anthony HOOKS, Defendant–Appellant.**

No. 53239.

Missouri Court of Appeals, Eastern District, Division 1.

Feb. 16, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 6, 1988.

Application to Transfer Denied May 17, 1988.

Mary C. McWilliams, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was convicted by a jury of second degree murder and was sentenced as a persistent offender to life imprisonment. He appeals; we affirm.

The sufficiency of the evidence is not challenged; therefore, only the relevant facts are presented. On the evening of April 3, 1986, defendant was with three men, including the victim, Dewey Holmes. Defendant and Holmes got into a fight, which was broken up by one of the men.

That evening two women went to a liquor store. Near the liquor store they saw the victim lying on the sidewalk. One woman saw a man cross the street, approach the victim, and pull out a long-bladed knife. Both women saw the man stab the victim repeatedly and then walk away. The victim got up and staggered to the liquor store entrance, where he collapsed. He later died at the hospital from the stab wounds. The women described the assailant as about 5 feet and 6 inches tall, with a small build, and wearing dark clothes and a three-quarter length black coat.

Interviews led Detectives Sal Chrum and Stephen Hobbs to suspect defendant was involved in the killing. After defendant was picked up and taken to the seventh district police station, Detectives Chrum and Hobbs took him to the downtown station. They told him they wanted to talk to him about the killing of Dewey Holmes. The detectives did not otherwise speak to defendant while transporting him, and he was not handcuffed. At the downtown station, defendant was taken to an interview room. There he confessed he had knifed the victim after the fight. His confession was recorded on both audiotape and videotape.

At trial defendant moved to suppress his statements and the evidence found as a result of the statements. At the suppression hearing, Detective Chrum testified defendant was not questioned until he was in the interview room and until after he was advised of his *Miranda* rights. Chrum said defendant indicated he understood his rights but wanted to make a statement. Despite defendant's speech impediment, both detectives could understand him clearly. Chrum stated he detected no signs defendant was unable to understand his rights or the questions asked him.

Defendant admitted being with the victim and the other men and fighting with the victim, but he denied involvement in the knifing. Detective Chrum said he told defendant that they had information that he was possibly the person who killed Holmes, that he fit the description of the killer supplied by two witnesses, and that they wanted to put him in a lineup. Defendant then said he would like to make a further statement. He admitted going home after the fight, getting a butcher knife, and returning and stabbing the victim. He said he went home afterwards and cleaned the knife.

At the request of the detectives, defendant agreed to record his statement on both audiotape and videotape. Both recordings were made immediately after his oral statements. At the start of the audio recording he was again read his rights, and he indicated he understood and waived them. Pri-

or to the video recording, defendant was given a waiver of rights form, which was read to him before he signed it.

Following the recording sessions, defendant agreed to take the detectives to his home to retrieve the knife. At his home, he explained to his mother what had happened, and he indicated which knife he had used. The knife was taken as evidence.

Detective Chrum testified that at no time during the questioning or taping did defendant want to stop, rest, or speak with an attorney. Chrum said he and Hobbs did not encourage, threaten, coerce, or curse defendant.

Defendant testified at the suppression hearing as follows: the detectives handcuffed him when they picked him up, they encouraged him to confess and to lie about the killing, they cursed at him and told him he lied, they told him they had 12 eye-witnesses who saw him kill Holmes, he could not read, he did not understand his rights, and he attended a special school.

The trial court found defendant voluntarily confessed and overruled both motions to suppress.

On appeal, defendant contends the court erred in overruling his motion to suppress his statements because his statements were involuntary. Because his confession was involuntary, he asserts the evidence obtained as a result of it was fruit of the poisonous tree.

■ We must determine whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given. The state bears the burden of proving, by a preponderance of the evidence, the confession was voluntary. *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. banc 1986).

■ The test for "voluntariness" is whether under the totality of the circumstances defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed. *Id.*

■ Defendant argues his statements were involuntary because he was mentally coerced. He asserts his testimony shows he was susceptible to coercion because of his speech impediment and because he is a slower learner. He also alleges the detectives misled him about the evidence they told him they had against him.

Here, the state's evidence supports the trial court's finding that defendant's statements were voluntary. The detectives properly informed defendant of his rights and did not employ unfair or coercive tactics on him. They had no reason to believe defendant was unable to understand what he was doing or what they asked. The statements made by Detective Chrum after defendant's initial statement concerning the evidence against defendant were accurate and not misleading. *See State v. Cutts*, 694 S.W.2d 804, 808 (Mo.App.1985). Further, defendant was not a novice in dealing with the criminal justice system, having had at least three previous felony convictions.

Any conflicts in the evidence were for the trial court to resolve, and we defer to the court's superior position from which to determine the credibility of the witnesses. *Lytle*, 715 S.W.2d at 915.

The court committed no error in admitting the confessions; therefore, any claim of error in admitting evidence based on the taint from the allegedly unlawful confessions has no merit.

Judgment affirmed.

GARY R. GAERTNER, P.J., and CRIST, J., concur.