STATE of Missouri,
Plaintiff–Respondent,

v.

Daniel James KLUEG,
Defendant–Appellant.

Daniel James KLUEG,
Movant–Appellant,

v.

STATE of Missouri,
Respondent–Respondent.

Nos. 53776, 55865.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 17, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 15, 1989.

Application to Transfer Denied
Jan. 10, 1990.

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant appeals from his convictions for burglary and stealing. We affirm.

A jury convicted defendant of two counts of second degree burglary and two counts of stealing over $150.00. The trial court sentenced him as a prior and persistent

offender to two concurrent 15 years prison terms on the stealing charges and to two consecutive 15 year prison terms on the burglary charges, for a total of 45 years' imprisonment. Defendant filed a Rule 29.-15 motion, but on appeal does not pursue the denial thereof.

A police detective learned through a confidential informant that defendant was in possession of a videocassette recorder (VCR) similar to one stolen from a residence in December 1986. The police gave the informant $150.00 in marked currency with which to purchase the VCR and followed him to defendant's residence. Defendant and the informant proceeded to a storage shed. After donning a pair of gloves, defendant removed the VCR from the shed and he and the informant drove to defendant's girl friend's residence. The informant emerged from the residence with the VCR, placed it in his trunk, and drove to the police station. After witnessing the transaction and placing the VCR into an evidence locker, the detective along with four police officers returned to the girl friend's residence. They did not have a warrant. The detective knocked on the door; the girl friend, aged 16 and wearing a see-through negligee, answered. The police asked if they could talk to defendant and, when the girl friend said yes, they followed her to the basement where they found defendant lying nude in the girl friend's bed. The police arrested defendant. A search of his pants revealed the $150.00 in marked currency.

The police told the girl friend they had reason to believe stolen property was on the premises. After the girl friend consented verbally and in writing to a search, the police found property matching that taken from two residences, including the one from which the VCR was stolen.

Defendant was taken to the police station where he was informed of his Miranda rights and signed a waiver. He initially denied making the burglaries, but after the police showed him each piece of the stolen property, defendant stated, "You got the property, you get me, what more do you want." He then described in detail how he burglarized the two residences and the property he stole from them. He also made a written statement.

At trial, defendant again admitted to the burglaries. His defense, which was not mentioned in his confession, was that he was forced at gunpoint to commit the burglaries by someone to whom he owed money.

 Defendant first contends the trial court erred in overruling his motion to suppress evidence and statements because they were the product of an illegal arrest. "A warrantless arrest in a suspect's home is impermissible absent consent to enter or exigent circumstances." *State v. Murray*, 744 S.W.2d 762, 771 (Mo. banc 1988). We reject the state's argument that defendant does not have standing to challenge the arrest because he did not "live" in the girl friend's house. The test to be applied does not depend on a defendant's right to be in the premises where he was arrested; rather we are concerned only with whether defendant had a reasonable expectation of privacy in the premises. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978). We have no doubt that, under the circumstances of the arrest in this case, defendant satisfied that test. Defendant's point must nevertheless fail because here, as in *Murray*, the police were given consent to enter the residence by someone who clearly resided therein.

 Defendant's next point is that the trial court erred in overruling his motion to suppress his statements because they were involuntary. In analyzing such a claim we must determine whether the evidence was sufficient to sustain the trial court's finding that the statement was voluntarily given. The state bears the burden of proving, by a preponderance of the evidence, that the confession was voluntary. *State v. Hooks*, 748 S.W.2d 742, 744 (Mo.App.1988). "The test for 'voluntariness' is whether under the totality of the circumstances defendant was deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed."

*State v. Lytle,* 715 S.W.2d 910, 915 (Mo. App.1986). Defendant contends his confession was involuntary because the detective "told him it would be in his 'best interest' to confess and 'later on see what came from it,' while silence 'would not look good in his favor'...." These statements alone do not render the confession involuntary. *See State v. Wilson,* 755 S.W.2d 707, 709 (Mo.App.1988).

■■■ Defendant also contends his confession was involuntary because he was threatened with a charge of statutory rape. After reviewing the record, we disagree. The detective testified that no promises or threats were ever made to defendant; that at no point did defendant ask for an attorney; that he never asked that the interrogation be stopped; and that he never asserted his right to remain silent. Defendant testified the detective showed him all the stolen property and then told him he could be charged with statutory rape. Defendant's position was that he confessed to avoid this possibility. The detective denied making a threat but admitted recounting with defendant the circumstances of his arrest and stating, "there is a possibility that he could be looking at a statutory rape charge." We believe the statement was made in the context of reciting to defendant all the evidence the state had accumulated, or as the detective put it: "just to lay all the cards out on the table so defendant knew exactly what he was looking at." Moreover, defendant had five previous felony convictions and was therefore familiar with the criminal justice system. We do not believe the interrogation was of such a nature that defendant's will was overborne, and deferring to the trial court's superior position from which to judge credibility and resolve evidentiary conflicts, we believe there was sufficient evidence to support the trial court's finding.

■■■ In another point, defendant contends the trial court erred in precluding him from introducing a letter wherein the man he contends forced him to commit the burglaries admits the same. We note at the outset that any such statements in the letter are inadmissible hearsay, and be-

cause there are no circumstances providing assurance of the statements' reliability, the hearsay exception for declarations against interest is of no help to defendant. *State v. Turner,* 623 S.W.2d 4, 8–9 (Mo.banc 1981). The trial court here ruled that the letter was inadmissible for lack of a proper foundation; defendant submits two theories of trial court error. First he contends the court abused its discretion in overruling his motion for a sample of the man's handwriting. Defendant has not presented, nor has our research revealed, any authority permitting such a procedure as to a nonparty. Thus, we cannot conclude the trial court abused its discretion. Next, defendant contends the court erred in failing to admit the letter into evidence. While defendant elicited expert testimony that the signature on the letter matched the handwriting on other documents the man purportedly signed, there was no evidence that the signature on the other documents was genuine. *See State v. Clark,* 592 S.W.2d 709, 717 (Mo. banc 1980). Also, a witness for defendant testified he observed the letter being written and delivered it to defendant; however, the letter was not subsequently offered into evidence. Under these circumstances, we conclude the trial court did not err in refusing to admit the letter.

Defendant's point alleging improper joinder is without merit. His appeal concerning the denial of his Rule 29.15 motion is dismissed.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.